MONROE GENERAL TERM, June, 1850.    *Welles, Johnson, and Selden,* Justices.

### EARL *vs.* VAN ALSTINE.

One who owns or keeps an animal, of any kind, becomes liable for any injury the animal may do, only on the ground of some actual or presumed negligence on his part.

It is essential to the proof of negligence, and sufficient evidence thereof, that the owner be shown to have had notice of the propensity of the animal to do mischief.

Proof that the animal is of a savage and ferocious nature, is equivalent to proof of express notice. In such cases notice is presumed.

The owner of *bees* is not liable, *at all events,* for any accidental injury they may do.

Where, in an action against the owner of bees, for an injury done by them to the plaintiff's horses while travelling along the highway past the place where the bees were kept, it appeared that the bees had been kept in the same situation for eight or nine years, and there was no proof of any injury ever having been done by them, but on the contrary, witnesses residing in the neighborhood testified that they had been in the habit of passing and repassing the place frequently, without having been molested; it was *held* that this rebutted the idea of any notice to the defendant, either from the nature of bees or otherwise, that it would be dangerous to keep them in that situation; and that he could not be made liable.

THIS action was commenced in a justice's court. The complaint alledged that the defendant was the owner of 15 hives of bees, which he wrongfully kept in his yard adjoining the public highway, and that the plaintiff's horses, while travelling along the highway and passing the place where the bees were kept, were attacked and stung so severely that one of them died and the other was greatly injured, &c. The answer denied the charge contained in the complaint. Upon the trial, the keeping of the bees as alledged, and the injury to the horses, were proved, and the plaintiff recovered judgment for $70,25 and costs. Upon appeal to the county court of Wayne county, this judgment was reversed, and the cause was brought to this court by appeal from the judgment of the county court.

*By the Court,* SELDEN, J. This case presents two questions; 1. Is any one who keeps bees liable, at all events, for the inju-

ries they may do ? and 2. Did the defendant keep these bees in an improper manner or place, so as to render him liable on that account?

It is insisted by the plaintiff that while the proprietor of animals of a tame or domestic nature *domitæ naturæ*, is liable for injuries done by them, (aside from trespasses upon the soil,) only after notice of some vicious habit or propensity of such animal; that one who keeps animals *feræ naturæ* is responsible at all events for any injuries they may do, and that as bees belong to the latter class it follows of course that the defendant is liable.

In order to determine this question, upon which no direct or controlling authority exists, that I have been able to find, it becomes necessary to look into the principles upon which one who owns or keeps animals is held liable for their vicious acts. It will be found, on examination of the authorities upon the subject, that this classification of animals by the common law into animals *feræ naturæ* and *domitæ naturæ* has reference mainly if not exclusively, to the rights of property which may be acquired in them; those of the latter class being the subjects of absolute and permanent ownership, while in regard to the former only a qualified property can exist, and the distinction is based upon the extent to which they can be domesticated or brought under the control and dominion of man, and not at all upon the ferocity of their disposition, or their proneness to mischief. For instance, the dog, some species of which are extremely savage and ferocious, is uniformly classed among animals *domitæ naturæ*, while the hare, the rabbit and the dove are termed *feræ naturæ*, although comparatively harmless. It would not be rational to suppose that a classification adopted with exclusive reference to one quality of animals, could be safely used to define and regulate responsibilities growing out of other and different qualities; nor would it accord with that just analysis and logical accuracy which distinguish the common law, that it should be resorted to for that purpose. And although some dicta may be found in the books which might seem to countenance the idea, the decided cases do not lead to any such conclusion.

It is unnecessary to enter into any examination of the cases

Earl *v.* Van Alstine.

which establish one branch of the proposition contended for, to wit, that in order to make the owner of a domestic animal liable for any violent injury done by them unless connected with a trespass upon land, it must be averred and proved that the defendant had notice or knowledge of the mischievous nature of the animal. This, as a general rule, is settled by a series of decisions which have been entirely uniform from the earliest days to the present time. But although in many of these cases, most of which are cases of injuries done by dogs, the words *domitæ naturæ,* or equivalent words, are used to describe the animals, for the mischief done by which their owners would not be liable without notice, yet it is not alone because they belong to that class that the exemption arises, but because animals of that class are usually of a harmless disposition. I apprehend that if a person chooses to keep a domestic animal, as a dog, which is naturally savage and dangerous, he does so at his peril, and that he would be liable for any injury done by such dog, without evidence that he had ever done mischief before. This position is not without authority to support it, although it does not rest upon any adjudged case. In *Judge* v. *Cox,* (1 *Stark.* 285,) Abbot, J. suggests the question, but expressly reserves his opinion upon it as unnecessary to the decision of that case. But in *Hartley* v. *Harriman,* (1 *Barn. & Ald.* 620,) which was an action for an injury done to sheep by dogs, the declaration contained a special averment that the dogs were accustomed to worry and bite sheep; and the court held that this averment was not supported by proof that the dogs were of a ferocious and mischievous disposition. But Lord Ellenborough and Mr. Justice Bayley both said that it would have been sufficient to alledge generally that the dogs were of a ferocious nature, and unsafe to be left at large, and that evidence of that fact would support the action. These dicta are so obviously in accordance with common sense and reason, that they will undoubtedly be sustained whenever the question shall arise. It is true that in a case of injuries done to sheep our statute makes the owner liable without notice, provided the sheep are killed, but the principle would apply to any other injury.

---
Earl *v.* Van Alstine.
---

But while, as I have said, the cases which define the responsibilities of the owners of domestic animals are very numerous, those which relate to the liability of the proprietor of wild animals are rare. It has been assumed, rather than decided, that the latter class are kept at the peril of their owners. In *Rex* v. *Huggins,* (2 *Ld. Raym.* 1583,) it is said " There is a difference between things *feræ naturæ,* as lions, bears, &c. which a man must keep up at his peril, and beasts that are *mansuetæ naturæ,* and break through the tameness of their nature, such as oxen and horses. In the latter case the owner must have notice ; in the former an action lies against the owner without notice." The case in which this was said was an indictment for murder, but the language here given is copied and adopted by Buller, in his Nisi Prius. (*Bull. N. P.* 77.) It will be observed that while these authorities speak of a whole class, " things *feræ naturæ,*" yet the example given is that of lions, bears, &c.

So in a late case in our own courts, *Van Leuven* v. *Lyke,* (1 *Comst.* 516,) Judge Jewett, after stating the rule in respect to domestic animals, says, but as to animals *feræ naturæ,* such as lions, tigers and the like, the person who keeps them is liable for any damage they may do, without notice, on the ground that by nature such animals are *fierce* and *dangerous.*" Here the learned judge, although adopting the same classification, yet states the true ground of the owner's responsibility. The substance of the rules as given by him is, that one who keeps lions, tigers, or other fierce and dangerous animals, is liable at all events for any injury they may do. The words *feræ naturæ* add nothing of any value to the rule, but rather tend to mislead, as they are descriptive of many animals that are not ferocious or dangerous.

Peake, in his work on evidence, under the head of "" Actions founded in negligence," has the following : " If one man keep a lion, bear, or any other wild and *ferocious* animal, and such animal escape from his confinement and do mischief to another, the owner is liable to make satisfaction for the mischief so done without further evidence of negligence in him ; for every person who keeps such noxious and *useless* animals must keep them

Earl *v.* Van Alstine.

at his peril.   On the contrary, if a man has a dog, a bull, or any other domestic animal such as are usually kept and are indeed *necessary to the existence of man*, no action is maintainable without proof of knowledge, &c.; for without such knowledge no negligence or fault is imputable to the defendant." (*Norris'* *Peake*, 486.)   Three things are worthy of notice in this extract. In the first place the author mentions animals that are not only wild but *ferocious*, and speaks of them as not only noxious but *useless*.   In speaking of domestic animals he dwells upon their. utility and value; and lastly, he makes negligence the foundation of the liability of the owner.

Again, Chitty, under the head of actions on the case for negligence, gives the rule as follows: "The owner of domestic or other animals, *not naturally inclined to do mischief*, as dogs, horses and oxen, is not liable for any injury committed by them to the person or personal property, unless it can be shown that he previously had notice of the animal's mischievous propensity." (*Chit. Plead.* 82.)   This accurate elementary writer did not fall into the error of applying the rule to the whole class of animals *domitæ naturæ*, but adds the qualification "not naturally inclined to do mischief."   By his arrangement of the subject, too, he confirms the view of Peake, that the liability is based upon negligence.

These authorities seem to me to point to the following conclusions.   1. That one who owns or keeps an animal of any kind becomes liable for any injury the animal may do, only on the ground of some actual or presumed negligence on his part. 2. That it is essential to the proof of negligence, and sufficient evidence thereof, that the owner be shown to have had notice of the propensity of the animal to do mischief.   3. That proof that the animal is of a savage and ferocious nature is equivalent to. proof of express notice.   In such cases notice is presumed.

These views derive some support from the case of *May and wife* v. *Burdett*, (9 *Adol. & El. N. S.* 101.)   That was an action on the case, for an injury done to the wife by the bite of a monkey.   The declaration alledged that the defendant kept the monkey wrongfully, well knowing that it was of a mischievous

Earl v. Van Alstine.

and ferocious nature and accustomed to bite, &c.; but did not aver that the defendant had been guilty of any negligence. A verdict was found for the plaintiff, and the defendant moved in arrest of judgment, on the ground that as the action was founded in negligence, the declaration was defective in not containing any averment that the defendant had been guilty of negligence. The motion was overruled, it being after verdict. Ch. J. Denman says, " But the conclusion to be drawn from an examination of all the authorities appears to us to be this, that a person keeping a *mischievous* animal *with knowledge* of its propensities, is bound to keep it secure at his peril, and that if it does mischief *negligence is presumed.* The negligence is in keeping such an animal after notice." The injury for which this action was brought was done by an animal clearly *feræ naturæ*, and yet it was deemed necessary to aver the mischievous nature of the animal, together with knowledge on the part of the owner; and the question which arose and was very elaborately discussed was, whether the plaintiff should not have gone still farther, and inserted an averment of negligence.

Having shown then, as I think, clearly, that the liability does not depend upon the classification of the animal doing the injury, but upon its propensity to do mischief, it remains to be considered whether bees are animals of so ferocious a disposition, that every one who keeps them, under any circumstances, does so at his peril. If it is necessary for the plaintiff to aver and prove the mischievous nature of the animal, nothing of the kind was done in this case ; but if courts are to take judicial notice of the nature of things so familiar to man as bees, which I suppose they would be justified in doing, then I would observe that however it may have been anciently, in modern days the bee has become almost as completely domesticated as the ox or the cow. Its habits and its instincts have been studied, and through the knowledge thus acquired it can be controlled and managed with nearly as much certainty as any of the domestic animals ; and although it may be proper still to class it among those *feræ naturæ*, it must nevertheless be regarded as coming very near the dividing line, and in regard to its propensity to

Earl *v.* Van Alstine.

mischief, I apprehend that such a thing as a *serious* injury to persons or property from its attacks is very rare, not occurring in a ratio more frequent certainly than injuries arising from the kick of a horse, or the bite of a dog.

There is one rule to be extracted from the authorities to which I have referred, not yet noticed, and that is that the law looks with more favor upon the keeping of animals that are useful to man, than such as are purely noxious and useless. And the keeping of the one, although in some rare instances they may do injury, will be tolerated and encouraged, while there is nothing to excuse the keeping of the other. In the case of *Vrooman* v. *Lawyer*, (13 *John. Rep.* 339,) the court say "If damage be done by any domestic animal kept *for use or convenience,* the owner is not liable to an action, without notice." The utility of bees no one will question, and hence there is nothing to call for the application of a very stringent rule to the case. Upon the whole, therefore, I am clearly of the opinion that the owner of bees is not liable *at all events* for any accidental injury they may do. . The question is still left whether the keeping of these bees so near the highway subjects the defendant to a responsibility which would not otherwise rest upon him. I consider this question as substantially disposed of by the evidence in the case. It appears that bees had been kept in the same situation for some eight or nine years, and no proof was offered of the slightest injury ever having been done by them. On the contrary, some of the witnesses testify that they had lived in the neighborhood and had been in the habit of passing and repassing frequently, with teams and otherwise, without ever having been molested. This rebuts the idea of any notice to the defendant, either from the nature of bees or otherwise, that it would be dangerous to keep them in that situation ; and of course, upon the principles already settled, he could not be held liable.

The judgment of the county court must be affirmed.