AUGUST MULLER, Respondent, *v.* JOHN McKESSON et al., Appellants.

|     |     |
| --- | --- |
| 73  | 195 |
| 108 | 433 |

Where a defendant has asked the court to determine the questions in a case as matters of law in his favor on a motion for a nonsuit, if he afterwards desire any questions to be submitted to a jury as questions of fact, it is his duty to specify the questions.

In an action against the owner of a ferocious dog or other animal, for injuries inflicted by it, the *gravamen* of the action is the keeping of the animal, with knowledge of its propensities ; and as to the latter, proof that the animal is of a savage and ferocious nature is equivalent to express notice.

The owner is bound to keep the animal secure at his peril, and if it does mischief, negligence is presumed. This presumption cannot be rebutted by proof of care on the part of the owner in keeping or restraining it, and he is absolutely liable, unless relieved by proof of some act or omission on the part of the person injured.

The rule, therefore, of non-liability of a master to a servant, for injuries occasioned by the negligence of a co-servant, cannot be invoked to shield the owner of such an animal from liability for injuries to a servant, where a fellow servant was negligent in not properly fastening the animal, or in not giving notice of its being loose.

The owner will not be relieved from liability by slight negligence or want of ordinary care on the part of the person injured ; to constitute a defense, acts must be proved, with notice of the character of the animal, which would establish that the injured person voluntarily brought the injury upon himself.

Defendants owned and kept in an inclosed yard surrounding their factory a Siberian blood-hound, very large and ferocious, which was usually fastened up in the day-time and loosed at night. Plaintiff was employed in the factory as night watchman; it was his duty to open the gate to the yard every morning. On returning to the factory one morning after performing this duty, he was attacked by the dog and seriously injured. In an action to recover damages for the injuries, it appeared that it was the custom of G., defendant's engineer, to loose the dog at night and to fasten him in the morning, and to notify plaintiff when the dog was loose. No such notice was given on the morning of the injury, and plaintiff testified that he did not know or suppose the dog was loose. No circumstance was proved calling for unusual precaution on his part. *Held,* that it was not incumbent upon plaintiff to examine to see if the dog was fastened, and the evidence authorized the court to direct a verdict for plaintiff; that, to warrant a submission of the question of contributory negligence on the part of plaintiff, the evidence should have been sufficient to warrant the jury in finding actual notice that the dog was loose, or at least that the plaintiff had reason so to believe.

Also *held,* that plaintiff, by accepting the employment, did not assume the risk of such an accident; that the most that could be said is that he assumed the risks consequent upon the keeping of a ferocious dog, to be kept fastened up, save when he was otherwise notified, and beyond this he was entitled to the same protection as other persons.

(Argued March 22, 1878; decided April 2, 1878.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 10 Hun, 44.)

This action was brought to recover damages for injuries alleged to have been sustained by plaintiff from the bite of a savage and ferocious dog owned and kept by defendant. The facts appear sufficiently in the opinion.

*Charles H. Mundy,* for appellants. Plaintiff, in order to recover, was bound to show that he was free from negligence. (*Koney* v. *Ward,* 36 How. Pr., 255, 257; *Cogswell* v. *Baldwin,* 15 Vt., 404; *Sawyer* v. *Jackson,* 5 N. Y. L. Obs., 380; *Brock* v. *Copeland,* 1 Esp., 203.) The act of keeping the dog was not *per se* unlawful. (1 Add. on Torts, 229; 1

Esp., 203.) Plaintiff, being a servant of defendants, will be held to have assumed all the risks and dangers incident to his service, and cannot maintain an action for an injury resulting therefrom. (*Seymour* v. *Maddox*, 16 Q. B., 332; *McGlynn* v. *Brodie*, 31 Cal., 376; *Wight* v. *N. Y. C. R. R. Co.*, 25 N. Y., 562; *Hayden* v. *Smithville Mfg. Co.*, 29 Conn., 548; *Griffiths* v. *Godson*, 3 H. & M., 213; 1 Add. on Torts, 224; 9 W., H. & G., 223.) The injury complained of having resulted from the negligence of a co-servant in the same general employment, defendants are not liable. (*Falkner* v. *Erie R. Co.*, 49 Barb., 326.)

*Frederick A. Ward*, for respondent. The dog kept by defendants was a nuisance. (*Hinckley* v. *Emerson*, 4 Cow., 351; *Putnam* v. *Payne*, 13 J. R., 312; *Bulkley* v. *Leonard*, 4 Den., 500; *Dunlap* v. *Snyder*, 17 Barb., 565–567; *Barrington* v. *Turner*, 2 Lev., 28; *Brown* v. *Carpenter*, 26 Vt., 638; *Woolf* v. *Chalker*, 31 Conn., 127; *Maxwell* v. *Palmerton*, 21 Wend., 407; *Wheeler* v. *Brandt*, 23 Barb., 324; *Blackman* v. *Simmons*, 3 C. & P., 138; *Kelly* v. *Tilton*, 2 Abb. (Ct. App. Dec.), 495.) Being a nuisance, defendants harbored the dog at their peril, and were liable for all injuries done by him, irrespective of the question of negligence. (*May* v. *Burdett*, 9 Q. B., 101; 1 Pleas of Crown, 430; *Card* v. *Case*, 5 M., G. & S., 622; *Smith* v. *Pelat*, 2 Stra., 1264; *Jones* v. *Perry*, 2 Esp., 482; 31 Conn., 177; 2 Lans., 506; *Earl* v. *Van Alstine*, 8 Barb., 630; S. & R. on Neg., 218; *Rider* v. *White*, 65 N. Y., 54; *Corcoran* v. *Holbrook*, 59 id., 517.) The fact that the negligence of a fellow-servant caused the injury does not relieve defendants from liability. (59 N. Y., 517; *Hofnagle* v. *N. Y. C. R. R. Co.*, 1 S. C. R., 346.) Defendants were bound to take all necessary precautions for the safety of their workmen, and are responsible for choosing or using improper and unsafe implements, machinery and tackle. (*Ryan* v. *Fowler*, 24 N. Y., 414; *Plank* v. *N. Y. C. and H. R. R. R. Co.*, 1 S. C. R., 19; *Flike* v. *B. and A. R. R. Co.*, 53 N. Y., 550.) In entering defend-

ants' employment, plaintiff did not assume the extraordinary risk to which he was wantonly and unexpectedly exposed. (*Mansfield* v. *Bedde Co.*, 34 L. T. [N. S.], 696; Fisher's Digest, 1876, p. 230; *Connolly* v. *Poillon*, 41 Barb., 366; *Patterson* v. *Wallace*, 28 Eng. L. & Eq., 48; *O'Neill* v. *James*, 43 N. Y., 93; *Winchell* v. *Hicks*, 18 id., 565; *Barnes* v. *Perrine*, 2 Kern., 23; *Strong* v. *Laundry Co.*, 6 Hun, 528.)

CHURCH, Ch. J.   The defendants had a chemical factory in Brooklyn and owned a ferocious dog of the Siberian bloodhound species, which was kept in the inclosed yard surrounding the factory, and generally kept fastened up in day-time and loosed at night as a protection against thieves. The plaintiff was in the employ of the defendants as a night-watchman.   It was his duty to open the gate to the yard every morning to admit the workmen, and to do this he would pass from the door of the factory across a corner of the yard to the gate.   On the morning in question, as the plaintiff was returning from opening the gate, he was attacked from behind by the dog, thrown to the ground and severely bitten, and after freeing himself, and while endeavoring to reach the factory, was again attacked and bitten and seriously injured.   Upon the close of the evidence and after a motion for a nonsuit had been denied, the judge decided that there was no question for the jury but the question of damages, to which there was an exception. It is questionable whether this exception is available to the defendants in this court.   After the defendants had asked the court to determine the questions as matters of law in his favor on a motion for a nonsuit, and they afterwards desired such questions to be submitted to the jury as questions of fact, it was their duty to have specified the questions which they desired to have submitted.   (*O'Neill* v. *James*, 43 N. Y., 84–93; *Winchell* v. *Hicks*, 18 id., 558.)   The court might have assumed that the defendants rested upon their legal propositions and thus have been misled.   It would be, per-

haps, rather rigorous to inforce this rule in this particular case, and we have concluded to waive its application.

The points urged by the appellants in this case are : First. That the plaintiff was guilty of contributory negligence, or at least that the evidence would have warranted the jury in so finding. Second. That the plaintiff knew the vicious habits of the dog, and by voluntarily entering upon and continuing in the employment of the defendants, he assumed the risk of such accidents. Third. That if the injury was occasioned by the negligence of the engineer in not properly fastening the dog, or in omitting to notify the plaintiff that he was loose, it was the negligence of a co-servant, for which the defendants are not liable.

It may be that, in a certain sense, an action against the owner for an injury by a vicious dog or other animal, is based upon negligence; but such negligence consists not in the manner of keeping or confining the animal, or the care exercised in respect to confining him, but in the fact that he is ferocious and that the owner knows it, and proof that he is of a savage and ferocious nature is equivalent to express notice. (*Earl* v. *Van Alstine*, 8 Barb., 630.) The negligence consists in keeping such an animal. In *May* v. *Burdett* (9 Ad. & El. [N. S.], 101), Denman, Ch. J., said : "But the conclusions to be drawn from an examination of all the authorities appears to us to be this, that a person keeping a mischievous animal, with knowledge of its propensities, is bound to keep it secure at his peril, and that if he does mischief, negligence is presumed."

When accustomed to bite persons, a dog is a public nuisance and may be killed by any one when found running at large. (*Putnam* v. *Payne*, 13 J. R., 312; *Brown* v. *Carpenter*, 26 Vt., 638.) And when known to the owner, corresponding obligations are imposed upon him. Lord Hale says : " He (the owner) must, at his own peril, keep him up safe from doing hurt, for though he use his diligence to keep him up, if he escape and do harm the owner is liable in damages." In *Kelly* v. *Tilton* (2 Abb. Ct. App. Cas., 495) Wright, J.,

said : " If a person will keep a vicious animal, with knowledge of its propensities, he is bound to keep it secure at his peril." In *Wheeler* v. *Brant* (23 Barb., 324) Judge Balcom said : " Defendants dog was a nuisance, and so are all vicious dogs, and their owners must either kill them or confine them as soon as they know their dangerous habits, or answer in damages for their injuries." In *Card* v. *Case* (57 Eng. C. L. R., 622), Coltman, J., said : " That the circumstances of the defendants keeping the animal negligently is not essential ; but the *gravamen* is the keeping the ferocious animal, knowing its propensities." The cases are uniform in this doctrine, although expressed in a variety of language by different judges. (*Smith* v. *Pelah*, 2 Strange, 1264; *Jones* v. *Perry*, 2 Esp., 482; *Greason* v. *Keteltas*, 17 N. Y., 496; *Woolf* v. *Chalker*, 31 Conn., 121; *Blackman* v. *Simmons*, 3 Car. & P., 138; *Rider* v. *White*, 65 N. Y., 54.)

In some of the cases it is said that from the vicious propensity and knowledge of the owner negligence *will be presumed*, and in others that the owner is *prima facie* liable. This language does not mean that the presumption or *prima facie* case may be rebutted by proof of any amount of care on the part of the owner in keeping or restraining the animal, and unless he can be relieved by some act or omission on the part of the person injured, his liability is absolute.

" This presumption of negligence, if it can be said to arise at all, so as to be in any way material in a case where the owner is absolutely bound at his own peril to prevent mischief is a *presumptio juris et de jure*, against which no averment or proof is receivable. It is not a presumption in the ordinary sense of the word, raising a *prima facie* case which may be rebutted." (*Card* v. *Case, supra,* p. 623, note *b.*) It follows that the doctrine of non-liability arising from the negligence of a co-servant in not properly fastening the animal, or in not giving notice of his being loose, cannot be invoked for the reason that the negligence of the master being immaterial, that of his servant must be also.

The point as to contributory negligence presents the most

·difficulty. There are expressions in some of the cases indicating that the liability of the owner is not affected by the negligence of the person injured. In *Smith* v. *Pelah* (2 Strange, 1264) the owner was held liable, although the injury happened by reason of the person injured treading on the dog's toes, the chief justice saying : "For it was owing to his not hanging the dog on the first notice." It is not stated that the person injured knew of the dog's propensities, or that it was done intentionally. In *Woolf* v. *Chalker* (31 Conn., 130) it is said that the owner is liable "irrespective of any questions of negligence of the plaintiff," and citing *May* v. *Burdett* and *Card* v. *Case* (*supra*).

In *May* v. *Burdett* the chief justice, after approving of the ruling in *Smith* v. *Pelah* (2 Strange, *supra*), and a passage from Hale's Pleas of the Crown (p. 430), said : "It may be that if the injury was solely occasioned by the willfulness of the plaintiff after warning, that may be a ground of defense, but it is unnecessary to give any opinion as to this." It is not intimated, as before stated, in *Smith* v. *Pelah*, that the treading on the toes of the dog was done intentionally, or with knowledge of his viciousness, and I do not think that it can be claimed from authority, and certainly not from principle, that no act of the person injured would preclude him from recovering, however negligent or willful. The apparent conflict on this point arises, I think, mainly in not making a proper application of the language to the facts of the particular case. If a person with full knowledge of the evil propensities of an animal wantonly excites him, or voluntarily and unnecessarily puts himself in the way of such an animal, he would be adjudged to have brought the injury upon himself, and ought not to be entitled to recover. In such a case it cannot be said, in a legal sense, that the keeping of the animal, which is the *gravamen* of the offense, produced the injury. (*Coggswell* v. *Baldwin*, 15 Vt., 404; *Koney* v. *Ward*, 36 How. P. R., 255; *Wheeler* v. *Brant*, 23 Barb., 324; *Blackman* v. *Simmons*, 3 Car. & P., 138; *Brock* v. *Copeland*, 1 Esp., 203; *Bird* v. *Holbrook*, 4 Bing., 628.)

But as the owner is held to a rigorous rule of liability on account of the danger to human life and limb, by harboring and keeping such animals, it follows that he ought not to be relieved from it by slight negligence or want of ordinary care. To enable an owner of such an animal to interpose this defense, acts should be proved with notice of the character of the animal, which would establish that the person injured voluntarily brought the calamity upon himself. *Brock* v. *Copeland* (1 Esp., 203), cited and relied upon by the counsel for the appellant, is in some of its features like this, and while some of the language of Lord KENYON is not in harmony with that used in other cases, yet from the facts stated it is fairly inferable that the foreman voluntarily went into the yard at an unusual time and, so far as appears, without business, knowing that the dog was loose and knowing his ferocious nature. The question then recurs whether, from the facts appearing in this case, the jury would have been justified in finding that the plaintiff was guilty of that kind of negligence which would relieve the defendants ; in other words, could they have found that in any proper sense the plaintiff brought the injury upon himself ? He was in discharge of his duty at the proper time and in the right place. He passed from the factory to the gate in the direct path, and was returning when he was attacked by the dog. In *Blackman* v. *Simmons* (3 C. & P., 138) the injury was by a vicious bull, and the court laid stress upon the circumstance that the plaintiff was traveling where he had a right to go, and said : " If the plaintiff had gone where he had no right to go, that might have been an answer to the action." It was not shown that the plaintiff was out of his place, nor what was more important and indispensable, was it shown that the plaintiff had notice that the dog was loose, or that he had reason to suppose that he was loose. It was the custom of Godfrey, the engineer, to loose the dog at night and fasten him in the morning, and to notify the plaintiff when the dog was loose. No such notice was given. The plaintiff testifies positively that he did not know or sup-

pose the dog was loose, and from the evidence of Godfrey, called by the defendants, it is inferable that the dog had not been loosed for several days, and if it had the plaintiff had a right to suppose that Godfrey had fastened him that morning. It is sufficient to say that the evidence did not show that the plaintiff had notice that the dog was loose, nor were the circumstances such as to induce him to believe that such was the fact. If the negligence of the plaintiff is to prevail, it must be predicated upon not taking the precaution to look, examine, and ascertain whether the dog was fastened or not. The plaintiff might have ascertained by examination whether the dog was fastened in his kennel or not; but I do not think that he was bound to exercise that degree of care, or that the defendant can be relieved from liability because he did not.

It does not appear that such had been his habit, or that his attention had been called to any circumstance to call for unusual precaution. The evidence must have been sufficient to warrant the jury in finding actual notice that the dog was loose, or at least that the plaintiff had reason to so believe. This rule is quite as liberal as ought to be adopted in favor of a person who keeps an animal of such savage ferocity as this was found to be. *Ilott* v. *Wilkes* (3 B. & A., 308), and *Bird* v. *Holbrook* (4 Bing., 628), were both cases of spring guns; in the former the person injured had notice, and in the latter, though a trespasser, he had not, and the action was held maintainable in the latter and not in the former. BEST, C. J., sat in both cases, and in the last said: "If anything which fell from me in *Ilott* v. *Wilkes* were at variance with the opinion I now express, I should not hesitate to retract it, but the ground on which the judgment of the court turned in that case is decisive of the present, and I should not have labored the point that the action was not maintainable in that case, on the ground that the plaintiff had received notice, unless I had deemed it maintainable if no notice had been given." In the former case HOLROYD, J., expresses the principle of non-liability, when notice has been given, to be that the act which produced the injury to the

plaintiff "must be considered wholly as his act, and not the act of the person who placed the gun there."

As negligence, in the ordinary sense, is not the ground of liability, so contributory negligence, in its ordinary meaning, is not a defense. These terms are not used in a strictly legal sense in this class of actions, but for convenience. There is considerable reason in favor of the doctrine of absolute liability for injuries produced by a savage dog, whose propensities are known to the owner, on the ground of its being in the interest of humanity, and out of regard to the sanctity of human life : but as these animals have different degrees of ferocity, and the rule must be a general one, I think, in view of all the authorities, that the rule of liability before indicated is a reasonable one, and that the owner cannot be relieved from it by any act of the person injured, unless it be one from which it can be affirmed that he caused the injury himself, with a full knowledge of its probable consequences.

The evidence in this case falls far short of warranting a verdict that the plaintiff had committed any such act. As before stated he had no notice that the dog was loose, but had every reason to suppose that he was fastened, and did in fact suppose so. He was in the discharge of his duty, and was not called upon to institute an inquiry whether the dog had broken his fastenings, or that Godfrey had been negligent in not giving him notice that the dog was loose.

The remaining point, that the plaintiff assumed the risk of such accidents, is not tenable. The rule is that a servant assumes the ordinary risks incident to the business in which he engages. What were the risks of his employment here as it respects the dog ? He was informed, it is true, of the nature of the animal, but he was also told that the dog would be kept fastened, and the uniform habit was to notify him when the dog was loose. By the terms of his employment, and the conduct of those who represented the defendants, the most that can be said is that he assumed the risks consequent upon the keeping of a ferocious dog, which was kept fastened

except when he was otherwise notified. Beyond this the plaintiff is entitled to the same protection as other persons. This is not a case for relaxing the rule of liability. The dog was of immense size, and a brute as savage as a tiger or a lion, and should be more properly classed with such wild beasts than with the domestic dog, which, although useless, is generally comparatively harmless. He had no respect for persons. In the language of the person who sold him to defendants, "he bit everybody." There is no legal excuse for exposing human life to the ferocity of such an animal.

The judgment must be affirmed.

All concur, except RAPALLO, J., absent.

Judgment affirmed.