Danforth, J.
That the plaintiff was very seriously injured by the unprovoked and persistent attack of the dog, is not denied. Indeed no evidence was given upon the trial showing or tending to show the slightest foundation for the affirmative defense set up in the answer. It is alleged, however, by the defendant that the. evidence failed to show either (1) that the dog was owned or harbored by the defendant, or (2) that the dog was vicious, accustomed to bite, or (3) that the defendant had knowledge of such propensities.
The last objection was not made at the trial, but upon all points we find quite enough evidence in the record to support the conclusion of the court below. The dog was a cross between a mastiff and a bloodhound or a ¡Newfoundland, in color dark brown or between black and brown, of an unusually large size, solid and heavy, having a short thick neck, and was in fact very ferocious. He came upon the plaintiff’s premises m the evening, attacked and bit certain pigs which were gathered there, and only desisted from doing so when, seeing the plaintiff, he turned upon him, “went for his throat,” which the plaintiff protected by his arms, and in spite of resistance the dog threw him upon the ground, bit him “seven times on one arm and five on the other,” and kept his hold in spite of the plaintiff's struggles and every effort on the part of neighbors who, hearing the plaintiff’s cries had come to his assistance, Until one, having a gun, shot the dog dead as he was ■making again for the plaintiff’s throat. He had before bit the defendant’s coachman, one Robinson, and his wife. After he was killed, his body was thrown into the street, and was there seen and identified as a dog belonging to .the defendant:
One witness, a workman employed by defendant, described the dead dog, and being asked to give the appearance of the dog before that time seen by him at defendant’s, "said, “the same appearance exactly,” the same in color, hair, and size. Being asked, “You don’t know whether it was the same dog or not?” said, “I could not swear positively, but it looked like the same dog.” The dog he saw at defendant’s was at the time chained up in his stable, and being asked “whether you know anything about his disposition,” said, “he looked to be vicious to me.” Another witness speaks of the dog as one once owned by himself, and afterwards “around” defendant’s, “probably from a year to fifteen months.” Asked: “The dog that Mr. Bauer ” (defendant) ‘ ‘ had this length of time at his place, did you previously own him?” Answered: ■'Yes, sir” Asked: * What is your best impression as to whether the dog lying in- the road was the same dog that *768 was in Mr. Bauer’s place?” Said: “I judge it was the same dog, to the best of my belief.” Asked: “How was that dog kept at Mr. Bauer’s place, chained? ” Said: ‘[1] When I saw him he was chained up in the yard.” Again he testified that he saw him in defendant’s yard “ three or four times,” each time before December, and “always chained up.”
The defendant in his own behalf testified that he bad not seen the dead dog, but that while he kept always “ half a dozen dogs,” they were always in chains day and night,” at night tied out to the buildings, in the day-time, in the house,” “never unchained.” He, however, said that he did not “attend to them personally,” having in his employ a dozen men, Robinson among others. He had not heard that any of his dogs had been killed or were missing or that Robinson had been bitten by any dog. Robinson was not called. The evidence of identity was as good as could be expected, and whether it was the dog harbored or owned by the defendant, was a question which the jury might reasonably be expected to be able to answer. The defendant was properly called upon for proof, and it seems plain that some of his servants whose duty to his dogs made them familiar with their number and location, might have supplied better evidence, if the facts warranted it, than he was able to give to the jury. I think the evidence actually in the case tends to establish that the dog complained of was the defendant’s dog, and that the dog was of a ferocious and vicious disposition. Does it also tend to establish knowledge of that disposition on the part of the defendant ? In Baldwin v. Casella (7 Ct. of Ex. [L. R.], 325) it is said “all dogs may be mischievous, and therefore a man who keeps a dog is bound either to have it under his own observation and inspection, or, if not, to appoint some one under whose observation and inspection it may be, and that person’s knowledge is the knowledge of the owner.”
In the case before us Robinson was one of the servants to whose care the dog was entrusted, and Robinson was himself bitten by him before the plaintiff suffered. It is not material that the fact was not communicated to the master. Again, if the dog was the defendant’s dog, the very purpose for which the defendant kept him, charges him with knowledge of his character, and he is, therefore, chargeable with negligently keeping him, although it did not appear that he had actually bitten another person before he bit the plaintiff (Worth v. Grilling, 2 Com. Pl. (L. R. 1). In that case the court say, “ The defendants admitted that the dog was purchased for the protection of then premises. Unless of a fierce nature he would hardly have been useful for that purpose. In Buckley v. Leonard (4 *769 Den., 500), an action for damages for injuries inflicted by a. dog, it appeared among other things “that for the most part, the defendant had kept his dog chained up in the daytime, and in his store nights,” and the defendant, having had a verdict, it was reversed, the court saying, aside from proof that the defendant had knowledge of the dog’s disposition, “ the fact that he usually in the day-time kept him confined. and in the night kept him in his store, is strong evidence that he was fully aware that the safety of his neighbors would be endangered by allowing him to go at large.”
The case of the defendant, therefore, is that of one who has in his possession and under his control an animal dangerous, unless reasonable precautions are taken to prevent injury to third persons. In such case it is obvious the injury must have occurred by his neglect, and for the consequences he should be held responsible (Muller v. McKesson, 73 N. Y., 195). A point is submitted by the appellant, to the effect that the court erred in admitting evidence of a conversation between the plaintiff and defendant after the injury, and before the commencement of the action. It appears that the defendant called the plaintiff to his office and inquired whether he “ was the man bit by the dog.” Plaintiff said, “yes ” and now testifies, “he asked me what I was going to do about this case; I said I didn’t know; that he knew best, so we had a few words talk. “ Well,” he said, “ I’ll give you five dollars a week and pay the doctor’s bill.” So I made him answer back that that was too little to support my family; and then I came out; my arm was punishing me bad and I could not stand the pain; he said, “I suppose you will sue me.” I said “I suppose so, too; he said then, he and I would have to fight it out the same as the dog and I had fought.” Defendant’s counsel moved to strike out the answer, assigning no ground. It was not error to deny the request. The conversation was sought by the defendant, and entered upon without reservation. It does not appear that the offer to pay was in compromise of any dispute between the parties. The disagreement was in reference only to the amount, and the transaction might well be regarded a tacit admission of liability In such a case, even tide offer of a sum by way of compromise, is held to be admissible, unless stated to be confidential or made without prejudice (Wallace v Small, 1 Moody & M., 446; Thomson v. Austen, 2 Dow & Ry , 358). In this instance, there was no caution of that kind, nor anything from which it could be inferred that the offer was made by way of sacrifice or concession for the sake of peace, or in settlement or compromise of a disputed claim.
*770 Wé think the case was one proper for the jury, and that no error was committed by the trial court. The judgment appealed from should, therefore, be affirmed.
All concur, except Earl and Pbckham, JJ., not voting.