## FILBERT v. DELAWARE & H. CANAL CO.

*(Superior Court of New York City, General Term.* October 25, 1888.)

MASTER AND SERVANT—NEGLIGENCE OF MASTER—DANGEROUS PREMISES.

An employe, whose duty was to uncouple slowly moving cars, stepped between them for that purpose, at a point where the track passed over a pit, and, his foot falling into a hole, his arm was caught between the bumpers and crushed. In his action for the injury, the hole was referred to as uncovered, but witnesses for defendant testified that it was covered. The pit was covered with planks and had been opened the day before the accident. *Held,* that the hole referred to by plaintiff might have been merely a space left by an imperfect re-covering of the pit, which was such negligence as would render defendant liable, and that a verdict of the jury for plaintiff cannot be disturbed.

Appeal from jury term; RICHARD O'GORMAN, Judge.

Action by George Filbert against the Delaware & Hudson Canal Company for negligence whereby plaintiff fell and had his arm crushed between the bumpers of cars on defendant's track. Verdict and judgment for plaintiff, and defendant appeals.

*Edwin Young, Matthew Hale,* and *Frank E. Smith,* for appellant. *Baldwin & Blackmar,* for respondent.

SEDGWICK, C. J. The work assigned by the defendants to the plaintiff, to be done for them, was uncoupling of cars while they were slowly moving upon the rails. At the time of the occurrence in question he was proceeding to uncouple in a manner in which he had been previously instructed. He stepped with his left foot upon the track, raising his left arm to uncouple the cars. His left foot fell into a hole between the bumpers of the cars, and, as then caught, he moved some distance beyond the hole, while the cars were moving. The negligence of defendants is predicated of their omission of duty to keep the place where the hole was in such a state that the plaintiff, in the course of the work given to him, would not fall in it. The "hole," as it was called, was at some part of the top of a regularly made pit, in which a wheel and ropes attached to it were placed to manage cars upon the track above. In the usual condition of affairs, a set of planks completely covered the hole, so that it was entirely safe to workmen walking over it. These planks were taken up occasionally only, and for specific purposes connected with repairing the wheel or ropes. In such instances they were pried up by a crow-bar or a like tool, and afterwards replaced. On the day before the accident the planks had been removed, and, it may be assumed, had been replaced with the exception of two, which had been injured in their removal, and in their stead two others were used. The plaintiff knew of the uncovering, but the jury were not bound to find that he knew of the manner of the re-covering, or that there was any imperfection in it. Upon the record of plaintiff's testimony here, it was competent for the jury to find that he did not mean to testify that the pit was entirely uncovered, and that the hole that his foot fell in was the uncovered pit. They might find that the hole he meant was an imperfection in the covering, made by a short plank, or one that was loose. And here it may be said that the testimony of the numerous witnesses for the defense, who said that the hole was covered, or was not uncovered, did not oblige the jury to find that their evidence was conclusive; that there was no imperfection in the covering in which the plaintiff's foot might have fallen. I know that the complaint charges that the hole was open and uncovered, and these words were used through the trial, yet the actual issue referred to a space over the pit where the plaintiff's foot might have fallen, and where he testified it did fall. I am of opinion that it was the duty of the master—that is, the defendants—to have a covering that would protect the servant in working above the pit. Evidently the method of covering was not of a kind, like a trap-door of a single piece, that a single motion may lift and return. These were single planks,

unconnected with each other, and when they were taken off no cover existed, and the duty of the master returned to the point where it was in the first place; that is, to make the pit safe for the workmen. At the least it was for the jury to say whether the defendants had used due diligence in respect of their duty to provide a safe cover or covering. It was not a risk of the plaintiff's employment which he took if he chose to enter the employment. In *Muller* v. *McKesson*, 73 N. Y. 204, where a servant was injured on the premises where he was employed, by a savage dog kept by the master, the court said: "What were the risks of his employment here as it respects the dog? He was informed, it is true, of the nature of the animal, but he was also told that the dog would be kept fastened, and the uniform habit was to notify him when the dog was loose. The most that can be said is that he assumed the risks consequent upon the keeping of a ferocious dog, which was kept fastened, except when he was otherwise notified. Beyond this the plaintiff is entitled to the same protection as other persons." The plaintiff had no reason to believe that the track was not safe at all times when he was called to work upon it, or that there was any risk. Whether the plaintiff was guilty of contributory negligence was for the jury to determine. I see no exception which calls for a reversal of the judgment. Judgment and order affirmed, with costs.