CULLEN, J.　This action is brought to partition certain lands of which the plaintiff and parties defendant are seised as tenants in common.　The defendants answered, admitting the allegations of the complaint as to the rights and interests of the parties; but they denied that the premises described in the complaint were the only lands, real estate, or interest therein within the state owned by the parties to the action in common.　The allegations of the answer in this latter respect are positive, and the verifications were made by the defendants of their own knowledge.　The plaintiff's attorney applied to the attorney for the defendants for information concerning the other lands of which it was claimed the parties were seised. No response was made to this application.　Thereupon the plaintiff, on an affidavit that she knew of no other lands belonging to the parties, and an affidavit of her attorney that he had examined the records and could find no such lands, applied to the special term for an order directing the defendants to furnish a bill of particulars of the lands.　The defendants made no answer to the facts alleged in the moving papers, and the court denied the plaintiff's application.

We think this disposition was erroneous.　A party may be required to furnish the particulars of almost any allegation, either of complaint or answer, when the interests of justice require it.　Tilton v. Beecher, 59 N. Y. 176.　If the defendants had submitted an affidavit that they knew of no other lands owned by the parties, then, of course, despite the allegations in their answers, they could not have been directed to furnish a bill of particulars.　But, as they made no denial, it is to be presumed that the allegations of their answers are true, and that they either know or have information of the existence of such lands.　Why should they not be directed to furnish the information? What good object can be attained by subjecting the parties and the courts to the burden of two litigations when one will suffice, and the plaintiff desires to confine the controversy to one action if she can obtain the necessary information?　Under rule 65 of the supreme court, if there are parcels of land not included in this action, the plaintiff may be subjected to the whole costs of the action.　She has therefore every interest to include all the land in this suit, and she should be given that privilege.

The order appealed from should be reversed, with $10 costs and disbursements, to be taxed in the final award of costs, and motion granted.　All concur.

---

SECOND NAT. BANK OF CITY OF ELMIRA v. WESTON et al.

(Supreme Court, Appellate Division, Fourth Department.　June 18, 1898.)

1. BILLS AND NOTES—INNOCENT PURCHASER—BURDEN OF PROOF.
　　When a note sued upon was shown to have been executed as an accommodation note, without authority, in a firm's name, by a former member, subsequent to its dissolution, but antedated prior thereto, the burden is upon the plaintiff to show that he purchased it for full value, and without notice of these facts.

2. SAME—NOTICE.
　　Plaintiff bought, before due, from the payee, a note executed without authority, in a firm name, by a former member, subsequent to its disso-

lution, but antedated prior thereto. The payee informed him that a deal had taken place between the firm and himself "by which this paper was secured to them, and it was given to him to use in his matters, and he had it for that purpose." *Held*, that this information constituted notice that it was· an accommodation note, and plaintiff could not recover.

3. APPEAL—QUESTIONS NOT RAISED BELOW.

Where, at the close of the proofs, counsel for each of the parties admitted that a verdict should be directed, and, when the court's views had been indicated, plaintiff's counsel formally asked without avail to go to the jury on the whole case without specifying an issue, he cannot complain on appeal that a question of bona fides was improperly disposed of.

Action by Second National Bank of the City of Elmira, N. Y., against Abijah Weston, impleaded with others. Motion · for new trial on exceptions ordered to be heard in the appellate division in the first instance, after the direction of a verdict for defendant. Denied.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Charles S. Cary, for plaintiff.

J. H. Waring, for defendant.

ADAMS, J. This is an action upon a promissory note, of which the following is a copy, viz.:

"$3,925.71.                  Olean, N. Y., Dec. 30, 1891.

"Eighteen months after date we promise to pay to the order of G. E. Ramsey thirty-nine hundred twenty-five & $71/100$ dollars at the First National Bank, Olean, N. Y., with interest; value received.       Weston Brothers.

"No. ———."

Prior to its maturity this note was discounted by the plaintiff, at which time it bore the indorsement of the defendants G. E. Ramsey, D. C. Conklin, W. H. & D. C. Conklin, and also of the Sole Leather Pad Co., per G. E. Ramsey. The material facts of the case are uncontroverted, and, briefly stated, are as follows: The firm of Weston Bros., consisting of the defendants William W., Abijah, and Orren Weston, was engaged in the manufacture of lumber at Westons Mills, N. Y., and its financial standing was of the very highest. For a period of years prior to the transactions out of which this action arose, William W. Weston had been in the habit of signing the firm name, either as maker or indorser, for the accommodation of his friends. This was done at first without the knowledge of his co-partners, but it finally came to the ears of the defendant Abijah Weston, who was apparently the financial manager of the firm, and he thereupon remonstrated with his brother, and informed him that if he continued to use the firm name for such purposes he (Abijah) would take steps to terminate the firm's existence. These remonstrances proving of no avail, the firm was dissolved on the 3d day of January, 1892, and was succeeded by the A. Weston Lumber Company. The note in suit was signed by William W. Weston in the firm name, and, although it bears date the 30th day of December, 1891, it was not, in fact, executed until some time in March, 1893, and was obviously antedated so that it might appear to have had its inception prior to the dissolution of the firm. Immediately after its execution it was

discounted by the plaintiff at the instance and for the benefit of the defendant Ramsey, the proceeds being applied towards the payment of another note which the bank had discounted for this same defendant, which was also executed by Weston Bros. as makers, and was then due.

The facts above detailed make it very clear that, not only was the making of the note in suit not within the scope of the partnership business, but that its execution by William W. Weston, after the dissolution of the firm, was a gross fraud upon his co-partners; and, consequently, as we have held in two other cases growing out of similar transactions, as soon as these facts were developed on the trial, the burden was cast upon the plaintiff of showing that it purchased the note for full value, and without notice of the circumstances under which it was executed. Bank v. Weston, 24 App. Div. 230, 48 N. Y. Supp. 403; Id., 25 App. Div. 414, 49 N. Y. Supp. 542. Fortunately, as respects this feature of the case, there is quite as little controversy as there is regarding the facts already narrated, for we are informed by the plaintiff's president that when the note in suit was brought to him his attention was called to the long time it had to run; that he thereupon inquired of Ramsey what it meant, and was informed by him that a deal had taken place between Weston Bros. and himself (Ramsey) "by which this paper was secured to them, and it was given to him to use in his matters, and he had it for that purpose." This, we think, was a pretty strong intimation that the note had not been given in the usual course of business for the benefit of the firm whose name was signed thereto, but that it was, just what the slightest inquiry would have shown to be the fact, an accommodation note, from which the firm derived no benefit whatever. It is doubtless true that a purchaser of commercial paper "is not bound, at his peril, to be on the alert for circumstances which might excite the suspicion of wary vigilance." Cheever v. Railroad Co., 150 N. Y. 59, 44 N. E. 701. In this particular instance, however, the plaintiff's chief fiscal officer was not only an experienced financier, but he was also a lawyer, and he, of course, knew that, in the absence of express authority, one member of the firm of Weston Bros. had no right to sign the firm name to notes for the accommodation of third parties. When, therefore, he was told by Ramsey that this note had been given to him to use in his matters, and that it had been "secured" to the makers, he was, in effect, informed that it was an accommodation note; and if, notwithstanding this information, he saw fit to purchase the same, we think that the trial court was correct in holding that he did so at his peril. Fielden v. Lahens, 6 Abb. Prac. (N. S.) 341.

At the close of the proofs it was insisted by counsel for each of the parties that there was no question of fact in the case, and that a verdict ought to be directed by the court. Subsequently, when the views of the court had been indicated, the plaintiff's counsel did, as a matter of form, ask to go to the jury upon the whole case, but he did not specify any particular question he desired to have submitted, and we think, in these circumstances, he cannot now be heard to complain that the question of the plaintiff's bona fides was improperly disposed of at the trial. Muller v. McKesson, 73 N. Y. 195; Mayer v.

Dean, 115 N. Y. 556, 22 N. E. 261.    Our conclusion, therefore, is that
the plaintiff's motion should be denied.

Plaintiff's exceptions overruled, motion for a new trial denied, and
judgment ordered for the defendants upon the verdict, with costs.
All concur.