## WILEY vs. SLATER.

Neither the county court, nor the supreme court, can reverse the judgment of a justice of the peace because it is against the weight of evidence.

If there is a disputed question of fact, upon which the case turned before the justice, or in relation to which there was evidence upon both sides, the county court should affirm the judgment, whatever may be its opinion as to the correctness of the justice's conclusion.

But if the judgment is entirely unsupported by evidence, so that it is really against law, the county court should reverse it; and if it fails to do so, it is the duty of the supreme court to correct the error and reverse the judgments of both courts.

In an action to recover damages for alleged injuries to the plaintiff's dog, inflicted by the defendant's dog, whatever may have been the character and habits of the defendant's dog, it is necessary for the plaintiff to prove that he was the aggressor, or in the wrong, in that particular fight. If the plaintiff's dog provoked the quarrel and caused the fight, the defendant, as the owner of the other dog, cannot be made responsible for the consequences.

The cases in which dogs have attacked human beings, although trespassers, and their owners have been held liable, are not applicable to the case of one dog attacking another.

A distinction is to be observed, between keeping a dog who is dangerous to human life, and one who is unwilling to have strange dogs upon his master's premises, and is in the habit of attacking and driving them off.

Owners of valuable dogs are bound to take a care of them proportioned to their value, and to keep them within their own precincts or under their own eye.

It is not a general rule that when two dogs fight, and one is killed, the owner can have satisfaction for his loss from the owner of the victorious dog.

APPEAL from a judgment of the Oneida county court, affirming the judgment of a justice. The action was brought to recover damages for alleged injuries to the plaintiff's dog, inflicted by the defendant's dog, in a fight, in consequence of which the plaintiff's dog died. The complaint alleged, 1st. That on or about the 29th day of May, 1855, the defendant set dogs upon, and who bit and maimed and greatly injured, the plaintiff's dog, and that the defendant struck, kicked, jammed and injured the plaintiff's dog, so that he died from said injuries, to the damage of the plaintiff of $100. 2d. That on or about the 29th of May, 1855, the defendant's dog and dogs attacked, bit and greatly injured the plaintiff's dog, so that he died. And that the defendant well knew that his dogs were ferocious and

dangerous, and were accustomed to bite and injure other dogs and animals, but still kept, and still keeps, said dog, well knowing him to be dangerous and accustomed to bite. And the plaintiff demanded judgment against the defendant for $100.

The defendant by his answer denied the complaint, and each and every allegation contained therein. And for a further answer, he alleged that, at the time mentioned in said complaint, he heard dogs fighting, and went to them, and amongst them were the plaintiff's dog; and as soon as the defendant saw the plaintiff's dog and the others fighting, he parted said dogs.

At the close of the plaintiff's testimony, the defendant moved for a nonsuit: 1st. On the ground that the plaintiff had not shown that the dog which did the injury belonged to the defendant; 2d. That the plaintiff had not shown that the defendant had knowledge that his dog was accustomed to attack. The motion was denied. The justice rendered a judgment in favor of the plaintiff for $25 damages and $5 costs, and the county court affirmed the judgment. The defendant then appealed to this court.

*R. H. Morehouse*, for the appellant.

*D. C. Stoddard*, for the respondent.

*By the Court,* W. F. ALLEN, J. 1. If there is a disputed question of fact, upon which the case turned in the court below, or in relation to which there was evidence upon both sides, the county court did right to affirm the judgment, whatever may have been the opinion of that court, or may be our opinion as to the correctness of the conclusion of the justice. The county court, or this court, cannot reverse the judgment of a justice because it is against the weight of evidence. (*Adsit* v. *Wilson*, 7 *How.* 64. *Kasson* v. *Mills*, 8 *id.* 377. *Bennett* v. *Scutt*, 18 *Barb.* 347.) But if the judgment was entirely unsupported by evidence, so that it is really against law, the county court should reverse, and if it fails to do so, it is the duty of this court to correct the error and reverse the judgment of both courts.

This is the first time I have been called upon to administer the law in the case of a pure dog fight, or a fight in which the dogs, instead of the owners, were the principal actors. I have had occasion to preside upon the trial of actions for assaults and batteries originating in affrays in which the masters of dogs have borne a conspicuous part, and acquitted themselves in a manner which might well have aroused the envy of their canine dependents. The branch of the law, therefore, applicable to direct conflicts and collisions between dog and dog is entirely new to me, and this case opens up to me an entire new field of investigation. I am constrained to admit total ignorance of the code duello among dogs, or what constitutes a just cause of offense and justifies a resort to the *ultima ratio regem*, a resort to arms, or rather to teeth, for redress; whether jealousy is a just cause of war, or what different degrees and kinds of insult or slight, or what violation of the rules of etiquette entitle the injured or offended beast to insist upon prompt and appropriate satisfaction, I know not, and am glad to know that no nice question upon the conduct of the conflict on the part of the principal actors arises in this case. It is not claimed, upon either side, that the struggle was not in all respects dog-like and fair. Indeed I was not before aware that it was claimed that any law, human or divine, moral or ceremonial, common or statute, undertook to regulate and control these matters, but supposed that this was one of the few privileges which this class of animals still retained in the domesticated state; that it was one of their reserved rights, not surrendered when they entered into and became a part of the domestic institution, to settle and avenge, in their own way, all individual wrongs and insults, without regard to what Blackstone or any other jurist might write, speak or think of the "rights of persons" or "rights of things." I have been a firm believer with the poet in the instructive if not semi-divine right of dogs to fight; and with him would say,

> "Let dogs delight to bark and bite,
> For God hath made them so;
> Let bears and lions growl and fight,
> For 'tis their nature to."

Wiley *v.* Slater.

It is possible, that had the owners of both dogs been present the belligerents would have been changed, and the familiar questions growing out of *son assault desmene and molliter manus imposuit* would have been presented, but no such questions are made here.

The defense is not rested upon the principle of self-defense, or defense of the possession of the master of the victorious dog. Had this defense been interposed, a serious and novel question would have arisen, as to the liability of the offending dog for excess of force, and whether he would be held to the same rules which are applied to human beings in like cases offending; whether he would be held strictly to the proof of the necessity and reasonableness of all the force exerted, under the plea that in defense' of his carcase or the premises committed to his watch and care, "he did necessarily a little bite, scratch, wound, tear, devour and kill the plaintiff's dog, doing no unnecessary damage to the body or hide of the said dog."

Addressing myself to the question really made in the case, then, the first difficulty I meet with is the want of proof of ownership by the defendant of the offending dog. The plaintiff made a *prima facie* case, by proving an apparent possession of the dog, but the appearances were entirely explained by the witness Nowell, who testifies that the dog was not owned by the defendant, nor kept nor harbored by him, but was really a trespasser on the premises, being kept at the shop adjoining. Upon the question of ownership there is really no conflict of testimony.

2. Whatever may have been the character and habits of the dog, there is no evidence that he was the aggressor, or in the wrong, in this particular fight. The plaintiff's dog may have provoked the quarrel and have caused the fight; and if so, the owner of the victor dog, whoever he may be, cannot be made responsible for the consequences.

3. There is no evidence that the dog alleged to belong to the defendant was a dangerous animal, or one unfit to be kept. The cases cited, in which dogs have attacked human beings,

although trespassers, and the owners have been held liable, are not applicable. It is one thing for a dog to be dangerous to human life, and quite another to be unwilling to have strange dogs upon the master's premises. To attack and drive off dogs thus suffered to go at large, to the annoyance if not to the detriment and danger of the public, would be a virtue, and that is all that can be claimed, upon the evidence, was done in this case. Owners of valuable dogs should take care of them proportioned to their value, and keep them within their own precincts or under their own eye. It is very proper to invest dogs with some discretion while upon their master's premises, in regard to other dogs, while it is palpably wrong to allow a man to keep a dog, who may or will, under any circumstances, of his own volition, attack a human being. If owners of dogs, whether valuable or not, suffer them to visit others of their species, particularly if they go uninvited, they must be content to have them put up with dog fare, and that their reception and treatment shall be hospitable or inhospitable, according to the nature or the particular mood and temper at the time, of the dog visited. The courtesies and hospitalities of dog life cannot well be regulated by the judicial tribunals of the land.

4. The evidence is slight that the dog died in consequence of this fight. I should infer, from the evidence, that he continued his annoying visitations until some one who did not own a white dog with black spots on his head, made use of a shot gun or "Sharpe's rifle," or some other substitute, to abate the nuisance. But as this question is left in doubt by the evidence, the judgment of the justice is conclusive as to the cause of death. I can, however, see no just grounds for the judgment. It can only be supported upon the broad ground that when two dogs fight and one is killed, the owner can have satisfaction for his loss from the owner of the victorious dog; and I know of no such rule. The owner of the dead dog would, I think, be very clearly entitled to the skin, although some, less liberal, would be disposed to award it as a trophy to the victor, and this rule would ordinarily be a full equivalent for the loss; and with that,

unless the evidence differ materially from that in this case, he should be content.

The judgment of the county court, and of the justice, reversed.

[OSWEGO GENERAL TERM, July 8, 1856. *Pratt, Bacon* and *W. F. Allen,* Justices.]