# SUPREME COURT.

## THE PEOPLE *ex rel.* PATRICK E. DILLON agt. THE BOARD OF METROPOLITAN POLICE.

When the *jurisdiction of an inferior tribunal* depends upon *evidence* to be taken before it, this court, upon *certiorari* will examine such evidence in order to determine the question of *jurisdiction, but for no other purpose.*

An order was given to the *relator* as a member of the Metropolitan police by one of its sergeants to proceed to Hamilton Avenue, Brooklyn, and either kill a dog which had bitten a child, or bring the dog to the station house. The *relator* did neither, alleging that the order was *illegal.* After a trial before the board of police, he was removed for *disobedience of orders,*

*Held,* that the order was a *legal and proper* one, which the *relator* was bound to obey.

Such a case is not one in which this court should interfere. The discipline of the police force of a large city to be effectual must be sharp and severe, and vigorously applied. Disobedience of orders is an offence which should not be extenuated.

*Brooklyn General Term, December,* 1862.

EMOTT, BROWN and LOTT, *Justices.*

CERTIORARI, to remove proceedings on an order of the defendant's removing the *relator* as a member of the Metropolitan police.

WINCHESTER BRITTON, *for the relator.*

A. J. VANDERPOEL, *for the defendant.*

By the court, BROWN, Justice. On the 6th of August, 1860, the relator was a member of the Metropolitan police force of the Metropolitan district of the state, and on the 11th of the same month was removed from his office by an order made by the defendant. This writ of certiorari is brought to remove the proceedings into this court for review and reversal, upon the ground that the board of Metropolitan police exceeded its authority, and that its proceedings were illegal and erroneous.

The 10th section of the act of the 10th of April, 1860, to amend the act concerning the Metropolitan police district, provides for the appointment by the board of the superintendent and other officers and members of the police

force whenever vacancies occur therein, and confers upon it authority to promulgate all regulations and orders through the superintendent of police, who shall be the executive head of the whole police force of the Metropolitan district, with the direction and control of the force, subject to the rules and regulations of the board of police. The 13th section of the act also directs that each member of the force shall hold office during good behavior, and shall be liable to be removed only after written charges shall have been preferred against him according to the rules and regulations of the board of police, and the same shall have been publicly heard and examined after notice to him thereof by the board in the manner prescribed by such rules and regulations. These two sections briefly prescribe the mode of appointment to office, the duration of the time thereof, and the manner of removal therefrom. Written charges are to be preferred against the member charged with delinquency. Notice is to be given to him of the hearing before the board of police, and the same are to be publicly heard; that is, there is to be a public trial upon written charges, of which the accused is to have due notice, with an opportunity to be present at the examination of the witnesses, and to offer such defence as he may have to make.

The return to the writ of certiorari is full and explicit upon all these points. It appears that charges of disobedience of orders were duly preferred against the relator. A copy thereof was duly served upon him, which he was required to examine and answer. A notice was also given to him of the time and place appointed for the hearing. He was also at the same time served with a copy of rule No. 7 of the rules of the board of police, which directs that where charges are filed the chief clerk shall notify the accused to call and examine and answer the same either in writing or orally, to be taken down by such clerk. The rule also directs, that the trial may be had at any subsequent meeting of the board of which the accused shall be

advised.   But he may waive such .trial, and submit the case
and answer upon affidavits, after two days' notice has been
given to the complainant of such waiver, and opportunity
for the latter to procure witnesses, or to furnish affidavits
in support of his complaint.   The return further shows
that on the 11th day of August, 1860, the trial was had
before the board of police at their office in the city of New
York.   Four witnesses were sworn and examined on behalf
of the complainant, and the relator was then and there also
sworn in his own behalf; and after hearing the proofs and
allegations of the parties, the board made the order that
the charge of disobedience of orders was established and
made out, and that the relator was guilty thereof, and that
he be removed from his office as a member of the Metro-
politan police force.

It is not claimed that there is any irregularity in the pro-
ceedings themselves which the relator seeks to review.   The
errors alleged are : First, the want of sufficient proof to es-.
tablish the charge of disobedience of orders.   Second, that
the order referred to required the relator to do an illegal
act which he was under no obligation to obey.   The suffi-
ciency of the evidence to sustain the charge is not open to
question and examination in this proceeding.   The office
of a common law certiorari is to bring up the record from
the inferior tribunal, and if it appears to have had juris-
diction, this court will not examine the evidence for the
purpose of reviewing the decision upon the merits.   (*Car-
ter* agt. *Newbold,* 7 *How. Pr. R.,* 166 ; *The People* agt. *Good-
win,* 1 *Selden,* 568; *The People* agt. *Van Alstyne,* 32 *Barb.
S. C. R.,* 131.)   When the jurisdiction depends upon evi-
dence to be taken before the inferior tribunal, this court
upon certiorari will examine such evidence in order to deter-
mine the question of jurisdiction, but for no other purpose.

The order given to the relator was from one of the ser-
geants of police.   It directed him to proceed to Hamilton
avenue, Brooklyn, and either kill a dog which had bitten a

child, or bring the dog to the station house. The specification was that he did neither. He did not kill the animal, or bring it to the station house. It is going very far, I think, to say that such an order issued to a policeman by his superior officer in a populous city is illegal. A dog, *per se*, is not a nuisance; but a dog with certain habits and propensities—such as flying at persons and biting children upon the public streets—is a nuisance of the worst kind, which it is clearly the duty of the police to suppress. If he did not kill the dog, the order was to bring him to the station house. Freedom from arrest and detention at the station house is not one of the privileges and immunities of dogs. The order, I think, was clearly a legal and proper order, and one which the policeman was bound to obey.

In conclusion, this is not a case in which we should interfere. The discipline of the police force of a large city to be effectual must be sharp and severe, and vigorously applied. Disobedience of orders is an offence which should not be extenuated.

The proceedings should be affirmed with costs.