Laverty *v.* Hogan.

---

## City Court.

*General Term—December*, 1885.

BRIDGET LAVERTY, PLAINTIFF AND RESPONDENT, *against* JAMES HOGAN, DEFENDANT AND APPELLANT.

**Liability of dog owners.** To charge the owner of a domesticated animal for a bite or other misconduct, the owner must be shown to have knowledge that the animal is inclined to do the particular kind of mischief that has been done. *Scienter* must be alleged and proved. Dogs are not necessarily nuisances, and their owners are not, as a rule, liable for maintaining a nuisance. The reasons, stated.

Mad and vicious dogs may be killed by any one.

Laverty *v.* Hogan.

Appeal from a judgment entered on verdict of jury, in favor of the plaintiff.

*Leeds & Morse,* for defendant and appellant.

*Chas. Blandy,* for plaintiff and respondent.

McADAM, Ch. J.—The action is to recover damages for the bite of a dog belonging to the defendant's son, who at the time was twenty years of age.

The theory on which the plaintiff sought to hold the defendant was, that while the dog was not his, he maintained it, because he allowed his son, who lived with him, to keep the dog about the premises. Assuming that the defendant is liable on this theory, he was certainly not liable in the absence of knowledge of the animal's wicked propensities. The dog was not of the species that are naturally savage and dangerous, and the defendant had the right to assume, in the absence of knowledge or notice to the contrary, that the animal was kind and of good character.

There is not a particle of evidence in the case bringing home to the defendant knowledge or notice of any propensity on the part of the dog to bite mankind.

Indeed, the request to charge, which the plaintiff's counsel asked the court to make, shows that he was conscious of the absence of such proof, for he requested the court "to charge that the vicious propensity of the dog can be gathered from surrounding circumstances, and that notice can be brought home to the defendant by effluxion of time. In other words, that it is not necessary that the defendant should know and see evidence of the viciousness of the dog, but if he might have known, seen it, or ought to have seen it if he exercised prudence and care, that that would give him notice." The court charged as requested, and the defendant's counsel excepted. This

exception is fatal to the verdict which the plaintiff ob-
tained.

The case of McCarthy v. City of Syracuse (46 N. Y.
194), cited to sustain the doctrine of implied notice, has
no application whatever to a dog case. In that action, the
city was sued for a defect in a street sewer, and it was
held that no notice to the city was necessary, because it
was the duty of the city to keep the sewers of the munic-
ipality in repair, and that this duty could not be dis-
charged by waiting to be notified that they were out of
order. But there is no duty imposed on the owner of a
domesticated animal to ascertain its character before he
becomes intimately acquainted with it. Its character,
like that of an individual, is presumed to be good until
the contrary is made known, and it is only after this
knowledge is acquired that the owner is liable for keeping
him. This law is not new; it will be found in all the
books.

The case of Feick v. Andel (1 *City Ct. R. Supp.* 61) and
Quinn v. Knickerbocker Ice Co. (*Daily Register*, Novem-
ber 18, 1885),* refer to many of the old and recent author-
ities bearing on the subject. The Maryland court of ap-
peals, in a recent case (Twigg v. Ryland, *Wash. Law R.*
November 1, 1884), re-affirmed the rule referred to in
these words: "The onus is on the plaintiff to prove the
knowledge of the owner or keeper, of the vicious propen-
sities of the animal, if it be of a domestic nature, and to
charge the defendant, he must be shown to have knowl-
edge that the animal is inclined to do the particular kind
of mischief that has been done."

The complaint, in an action for an injury by a domestic
animal, should allege that the owner knew it was vicious
(Van Lewen v. Lyke, 1 *N. Y.* 515; Wheeler v. Brant, 23
*Barb.* 324; Fairchild v. Bentley, 30 *Barb.* 147); and the
complaint in the present action, in compliance with the
requirement, alleges "that the defendant knew the dog

---

* See report of this case in note at p. 202.

was vicious,"—a fact that must be proved, as well as alleged. That *scienter* must be alleged and proved, has not only been decided by the cases cited, but by the following, among others: Rex v. Huggins, 1 *Ld. Raym.* 1583; Smith v. Causey, 22 *Ala.* 568; Vrooman v. Lawyer, 13 *Johns.* 339; Auchmuty v. Ham, 1 *Den.* 495; 4 *Id.* 127; Steele v. Smith, 3 *E. D. Smith*, 321.

The more recent cases are cited in Feick v. Andel (*supra*). In Thomas v. Morgan (2 *Cromp. M. & R.* 496), the court held that evidence that the dog had bitten other animals, without proof that notice of the fact had been communicated to the defendant, was not sufficient to charge him, and that the jury could not infer *scienter* from the mere fact of former viciousness (Wormley v. Gregg, 65 *Ill.* 251). It is sufficient, however, if the dog was accustomed, from time to time, to bite people, under circumstances which would not provoke a dog of good temper (Charlwood v. Greig 3 *Carr. & K.* 46.) There is no rule which requires proof of any particular number of instances of unprovoked biting, in order to charge the owner of a dog with notice of his mischievous disposition. Satisfactory proof of a single instance of biting mankind previously to the case complained of, and of the defendant's knowledge thereof, is sufficient (Arnold v. Norton, 25 *Conn.* 92).

In Tifft v. Tifft (4 *Den.* 175), it was held that a father is not liable for injury occasioned by his minor daughter's willfully setting his dog upon a neighbor's swine, without proof that he knew that his dog was accustomed to do mischief.

In Fleming v. Orr (2 *Macq.* 14) Lord COCKBURN said, in reference to an action for dog worrying sheep, "Every dog is entitled to at least one worry;" and the rule would seem to be true in reference to its attacks on mankind. Every dog seems to be entitled to one bite, and every bull to one gore at a man, before its owner or keeper can be made liable for the results of such "playful" tricks on

Laverty v. Hogan.

the part of his beasts (*Wood on Nuisance*, 802, *note*).    The
rule requiring proof of *scienter* does not apply, however,
where mischief is done by dogs while trespassing upon
the premises of another; for the law imputes the trespass
of the animal to the owner (Van Lewen *v.* Lyke, 1 *N. Y.*
515 ; affirming 4 *Den.* 127 ; Wells *v.* Howell, 19 *Johns.* 385;
Stafford *v.* Ingersoll, 3 *Hill*, 38).

The dog was not a trespasser in the present instance;
he was on the premises of his owner, and was there by
the permission of the janitor of the building as well.    As
to the policy or propriety of keeping dogs in tenements,
and allowing them to play in the yards thereof, it is not
necessary for us to advise, for so long as the owner is
allowed to keep them there, they are not trespassers
This dog had been kept about this same tenement for a
long time prior to the injury complained of; the occupants
had the same means of ascertaining its character, that the
defendant had, and yet no one seems to have complained
of the animal's habits.    The plaintiff resided in the same
house with Mrs. Wood, a co-tenant of the defendant, and,
if notice is to be imputed by mere acquaintance with the
animal, it might with equal force be imputed to all the
occupants of the house alike.    The defendant did not own
the dog—his son owned it, and kept it as a pet, and the
defendant, like the other tenants in the house, tolerated
it, although he no doubt could have removed it from
the premises, if he had chosen to exercise the power.
The plaintiff also contends that an idle dog is a nuisance,
and that the defendant is liable on the theory of main-
taining a nuisance.    We cannot subscribe to this as a
legal proposition.    There are no doubt many people who
believe that idle dogs are nuisances, but they are not nec-
essarily so in a legal sense.

An idle man may be a vagrant, but it does not follow
from this that all idle men are vagrants.    Some idle dogs
may be nuisances to the community, but it does not follow
that all are.    Dogs are the subject of ownership, and are

sometimes valuable property; and for any injury thereto, an action will lie (Parker v. Mise, 27 *Ala.* 480; Woolf v. Chakler, 31 *Conn.* 121; State v. McDuffie, 34 *N. H.* 523). They are also the subject of larceny (People v. Maloney, 1 *Park. Cr.* 598; People v. Campbell, 4 *Id.* 386); so that dogs are neither to be injured with impunity, nor stolen without subjecting the offender to the pains and penalties of the law.

Mad dogs, or dogs reasonably suspected of having been bitten by a rabid animal, are nuisances, and may be killed by any person, if at large, off from the owner's premises (*Wood on Nuisances*, § 765). Dogs accustomed to bark at night and to disturb the neighborhood by their noise, are nuisances, and may · be killed by any person annoyed thereby (Brill v. Flagler, 23 *Wend.* 354). Where a dog is ferocious, and attacks persons, he may be killed as a nuisance (13 *Johns.* 312; 4 *Cow.* 351).

The proof does not bring the defendant's dog within either of these definitions, so that we find no legal significance in the suggestion that the defendant is liable for keeping and maintaining a nuisance. In short, the plaintiff's case must stand or fall by the old rule that, in order to recover, *scienter* must be alleged and proved, and, for the failure to give such proof and the error of the trial judge, in charging that *scienter* might be implied by the effluxion of time, the judgment must be reversed an da new trial ordered, with costs to the appellant to abide the event.

HALL, J., concurred.

QUINN v. KNICKERBOCKER ICE Co. (*Daily Reg.*, November 18, 1885), is as follows:

McADAM, Ch. J.—The owner of creatures which, as a species, are harmless and domesticated, and are kept for convenience or use, such as cattle or horses, is not liable for injuries willfully committed by them, unless he is proved to have had notice of the inclination of he animal to commit such injuries (1 *N. Y.* 515; 8 *Barb.* 630; 30 *Id.*

Laverty *v*. Hogan.

471).  In other words, the owner of domesticated animals is not responsible for injuries they are not accustomed to do, and if an animal has acquired vicious propensities which animals of his species do not ordinarily have, the owner, before he can be made liable, must be shown to have had knowledge or notice of the fact. If he keeps the animal thereafter, he does so at his peril.  *Scienter* is the gist of the action (See Feick *v*. Andel, 1 *City Ct. R. Supp.* 61).

In 1 *Hale's Pleas of the Crown*, 430, the law is thus concisely stated :  "If a man have a beast, as a bull, cow, horse or dog, used to hurt people, if the owner know not of his quality, he is not punishable.  But if the owner have notice of the quality of his beast, and it doth anybody hurt, he is chargeable with an action for it."  In the present case, *scienter* was not proved, and for want of this proof the complaint was properly dismissed.  *Scienter* may be imputed to a corporation as well as to an individual, but notice of the vicious propensity, in order to charge a corporation, must be communicated to one whose official position gives to the communication the legal effect of notice to the corporation, or to one whose duty requires him to inform the corporation and whose admissions would be competent evidence against it (33 *L. J. Q. B.* 310).  There was no such notice to the corporation as is required to charge it with knowledge in the present case.  In this respect, the plaintiff's proofs were defective.

It follows, therefore, that the motion for a new trial must be denied, but without costs.

Laverty *v*. Hogan was affirmed by the New York common pleas (1 *State Rep.* 84).

## Dogs Trespassing.

When the animal is trespassing, the owner's knowledge of its vicious propensity is not necessary.  The common law holds a man answerable for a trespass of his domestic animals ; and as it is the natural and notorious propensity of many of such animals to rove, the owner is bound, at his peril, to confine them on his own land ; and if they escape and commit a trespass on the lands of another (unless through defect of fences which the latter is bound to repair), the owner is liable, though he had no notice, in fact, of such propensity.  The law deems the owner himself a trespasser for having permitted an animal to break into the inclosure of another.  And plaintiff may recover for mischief done by the animal upon his close, by way of aggravation of the trespass, without proof that defend-

ant had notice of his animal's vicious propensity (4 *Burr.* 2092 ; 2 *South.* 815 ; 7 *Watts & S.* 367 ; Van Leaven *v.* Lyke, 1 *N. Y.* 515 ; affirming 4 *Den.* 127 ; Wells *v.* Howell, 19 *Johns.* 385 ; Stafford *v.* Ingersoll, 3 *Hill*, 38 ; Barto *v.* Stephan, 19 *Week. Dig.* 164.

## Dogs Worrying or Killing Sheep or Lambs.

3 R. S. 7 ed. 2117, § 9, provides that the owner or possessor of any dog that shall kill or wound any sheep or lamb, shall be liable for the value of such sheep or lamb to the owner thereof, without proving notice to the owner or possessor of such dog, or knowledge by him, that his dog was mischievous or disposed to kill sheep.

## Vicious Animals.

One knowingly keeping on his premises a ferocious dog, without giving notice, and in such a way he will worry ordinary trespassers in the day time is liable for an injury inflicted by the dog, although upon a trespasser (Loomis *v.* Terry, 17 *Wend.* 496; and see Buckley *v.* Leonard, 4 *Den.* 500). Even a notice to "Beware of the Dog" will not protect the owner, unless it was called to the notice of the injured party (Sawyer *v.* Jackson, 5 *N. Y. Leg. Obs* 380). If the dog is kept chained the owner is as a rule not liable (Logue *v.* Link, 4 *E. D. Smith*, 63). A dog which is accustomed to bite other dogs, without being incited to do so, is a vicious animal, and the owner should kill him or confine him as soon as he has knowledge of his dangerous habits (Wheeler *v.* Brant, 23 *Barb.* 324).

## Letting Out Vicious Horse.

One letting a vicious horse to hire is bound to inform the hirer of his vices (Campbell *v.* Page, 67 *Barb.* 113.)

## Imputing Knowledge to Owner.

In an action for injuries to a horse kicked by the defendant's mule,—*Held*, that a hostler in the defendant's employ, apparently charged with the duty of feeding and taking care of their teams when they came to the stable, had not such a duty imposed upon him by the defendants as to make them chargeable with his knowledge of the viciousness of the mule (Shaver *v.* New York & Lake C. Co., 31 *Hun*, 55).

## Where One Dog Kills Another.

If plaintiff's dog provoked the quarrel, and caused the fight, defendant, as owner of the other dog, cannot be held responsible

Laverty *v.* Hogan.

(Wiley *v.* Slater, 22 *Barb.* 506) ; but the owner of a vicious dog attacking another without provocation is liable (Wheeler *v.* Brant, 23 *Barb*. 324).

## Who Liable as Owner.

A person in possession of a dog, or allowing him to remain about his house for twenty days, is deemed to be the owner thereof (1 *R. S.* 706, ? 20) ; but where the dog belongs to a hired laborer who follows him daily to his work, the employer is not liable (Auchmuty *v.* Ham, 1 *Den.* 495).

## Right to Kill Dog.

The owner of land is not justified in killing domestic animals found trespassing (Mathews *v.* Fiestel, 2 *E. D. Smith,* 90) ; but any person may kill a vicious dog permitted to run at large (Putnam *v.* Payne, 13 *Johns,* 312 ; Maxwell *v.* Palmerton, 21 *Wend.* 700 ; Dunlap *v.* Snyder, 17 *Barb.* 561) ; or a dog running at large who has lately been bitten by a mad dog (Putnam *v.* Payne, *supra*) ; or a dog in the habit of flying at persons in the public street (People *v.* Board of Police, 15 *Abb. Pr.* 167 ; 24 *How. Pr.* 481) ; or a dog on the land of the defendant killing fowl (Leonard *v.* Wilkins, 9 *Johns.* 233) ; or disturbing the peace (Brill *v.* Flagler, 23 *Wend.* 354).    If two dogs are fighting and cannot be separated, the the one making the attack may be killed if necessary to separate them (Boecher *v.* Lutz, 20 *Week. Dig.* 484).

In BOECHER *v.* LUTZ, *New York Common Pleas, General Term,* the following rule was laid down :

VAN HOSSEN J.—If the dog was killed whilst attacking the wife of the defendant, the plaintiff has no right of action ; but there was a conflict of testimony upon that point, and the justice must have found that the dog did not attempt to bite the defendant's wife.

The defense of a human being is not the only circumstance that will justify the killing of the dog. The owner of an animal may lawfully kill a dog if such killing be necessary to save the animal from death or from serious injury.

The killing cannot be done to avenge an attack that has ceased, and can only be justified when done to avert impending danger of death or serious injury of the animal (Moore *v.* Pearson 6 *Jones* [N. C.] 293 ; Williams *v.* Dixon, 65 *N. C.* 416.

If two dogs are fighting, and cannot otherwise be separated, the dog that made the attack may lawfully be killed.    Wright *v.* Ramscott, *Saunders,* 84).

To constitute a justification, it must appear, however, that the kill-

ing was necessary, and that the dog that was killed was the aggressor. In this case, the defendant's dog was muzzled and thereby incapacitated for defense. The plaintiff's dog was the aggressor, and it made a second attack upon the defendant's dog after having once been driven away. The defendant then seized the plaintiff's dog, whirled it by its hind legs in the air, and then dashed its brains out against the stones of the street. Was it necessary thus to kill the dog, in order to save the other dog from serious injury, or did the defendant unnecessary destroy it ?

The testimony upon the point is conflicting, and there is some evidence that the killing was an act of vengeance, but a finding that the killing was necessary could not be at all reasonable (Leonard v. Wilkins, 9 *Johns.* 533 ; Hinkley v. Emerson, 4 *Cow.* 351).

But the justice erred in excluding evidence that the dog was accustomed to bite mankind. He said that he would not receive evidence that the dog was ferocious, unless the acts of ferocity were done within a year prior to the trial. There is no such limit known to the law.

Acts of ferocity done at any time may be shown, but they will not make out a defense if it appears that for a long time the dog has ceased to be dangerous. If, however, it is proved that a dog is accustomed to bite mankind, that it was upon the highway, unmuzzled, and in a condition to do injury to human beings, the killing of it is lawful (Stewart v. Palmerston, 21 *Wend.* 407 ; Putnam v. Payne, 13 *Johns.* 312). We do not estimate what the decision of this case ought to be, but leave it to the justice to apply the law to the facts.

For errors in excluding testimony we think that there should be a new trial, but we give no costs of appeal.

DALY, J., concurred.

## Rights of Owners of Strays.

The owner of an animal seized for straying on the highway must establish his right to damages in the special proceeding provided by the statute ; he cannot maintain action (see *Code Civ. Pro.* §§ 3096 3108 ; and see sections 3082 to 3115 ; Willard v. Severance, 1 *How. Pr. N. S.* 521).

## Joint Wrongdoers.

When dogs kill sheep or do other damage jointly, the owner of each is liable only for the damage done by his own dog, and a joint action will not lie against them (Carroll v. Wheeler, 4 *Thomp. & C.* 31).

Laverty *v.*   Hogan.

### Fellow Servants.

The doctrine of non-liability for acts of a fellow servant does not, ordinarily apply to a dog case (Muller *v.* McKesson, 73 *N. Y.* 195)..

### Miscellaneous Notes.

See notes to Feick *v.* Andel, *Supplement to Vol.* 1, p. 64.

We take the following, in relation to the liability of an owner for damages done by his dog, from the Montreal *Legal News.* Our cotemporary says:

"The law concerning dogs and dog bites, in England, has given rise to numerous complaints, and these appear to be not without foundation. At the hearing of a case in the Bolton county court recently, damages were claimed from a defendant on account of his dog having bitten the plaintiff. The evidence proved that the dog,. a huge St. Bernard, rushed at the plaintiff, a little boy, knocked him down, 'tore a large piece out of his right cheek, disfiguring him for life, and shook him as a terrier would a rat.' The judge, however, found himself unable to award damages to the plaintiff, because the law requires that the dog must be proved, not only to have previously shown vicious propensities, but to have, to the knowledge of its master, been accustomed to bite mankind. The judge declared. that 'he wished it to go forth to the world that the. law relating to dog bites as it stands is barbarous.'

"In State *v.* McDermott, the New Jersey supreme court holds that a person bitten by a dog may recover damages from the owner, upon evidence that the dog, with the knowledge of the owner, had a mischievous tendency to bite, whether in anger or not. In either case,. the person bitten would suffer injury. A mischievous propensity, from which injury is the natural result. In the case of Hudson *v:.* Roberts, 6 *Exch.* 699, it appears that the plaintiff was walking in the street wearing a red handkerchief. The bull of defendant,— ordinarily gentle and quiet, and not known to have gored any person previously,—was being driven along the street when he attacked and gored the plaintiff. The defendant said that the red handkerchief did it, and that he knew the bull would run at anything red. The plaintiff recovered. The bull had no hostile feeling against the man he injured, and no disposition to gore mankind, yet, because of his mischievous propensity to rush at a red object, of which his owner knew, it was held that when he caused injury to the plaintiff, through that propensity, his owner should pay damages. A

domesticated bear may hug a man until his ribs be broken. This may be the mode adopted by the animal to manifest his affection; yet, if he had on other occasions previously shown his affection in that way, causing injury, and his owner knew of such propensity, the owner would have to pay damages caused by breaking the man's ribs. It is true that the bear is classed with animals *feræ naturæ*, and the presumption, in such case, would be that although domesticated, the animal had relapsed into his wild habits; yet although the presumption on the question of *scienter* would be against the owner, he might be able to prove that the habit of embracing persons did not proceed from the savage nature of the bear, but, under the influence of civilization, from a cultivated affection. But this proof would be held to be mischievous, because hurtful to those who were the object of the bear's affection.

"In the case of Oaks v. Spaulding, 40 *Vr.* 347, it appeared that Mrs. Oaks was driving cows home from pasture, when the ram of Spaulding attacked and injured her. It was shown that the ram had a propensity to butt mankind, and that the defendant knew it, but it did not appear whether the previous buttings by the ram proceeded from an ugly disposition, or from the exuberance of a playful spirit; yet it was held that the defendant was liable. It did not cure the hurt nor assuage the pain of the woman to be told that the ram, when he butted her, was only in one of his accustomed sportive moods. It might have been fun for the ram, but it was hurtful to Mrs. Oaks. It was a mischievous propensity, whether proceeding from ugliness of temper or from good nature, which, if known to the owner of the ram, made him liable for damages resulting from such propensity. There is no doubt, that in cases of animals not naturally inclined to do mischief, a previous mischievous propensity must be shown, and the *scienter* clearly established. The gist of the action is, not the keeping of the animal, but the keeping with knowledge of the mischievous propensity, whether proceeding from a savage disposition or not. The conclusion is, that the plaintiff below, having shown by his proof that on several previous occasions the dog in question had bitten various persons on the hand, with knowledge of the defendant, he was entitled to recover, even if the habit did not proceed from a ferocious nature, but was the result of a mischievous propensity."

### Injuries Done by Dog to Horse on Highway.

The following decision was filed by Judge THORNTON in the Sullivan county court, September, 1886, in the case of JOHN R. VAN NESS *against* JOSEPH DESHEIMER:

Laverty *v.* Hogan.

"The return shows that on July 11, 1885, the plaintiff's wife was driving a pair of mules, drawing a carryall wagon, through the town of Tusten, and that, while passing the defendant's house, the defendant's dog came out of the yard into the highway and made an attack on the offside mule, frightening the team, rendering it unmanageable, and causing it to run the wagon into the fence of a Mr. Stanton, doing $10 damage to the wagon. The defense interposed was a general denial, and, upon the trial, the justice rendered a judgment in favor of the plaintiff for $10 and costs, from which the defendant has taken the present appeal.

"THORNTON, Co. J.—In order to make the owner of a dog liable in an action at the suit of a person who has been injured by such dog, it must be averred and proved that the defendant had knowledge of its mischievous propensities. The gist of the action is the keeping of the dog after knowledge of its propensity to do mischief, and no action is maintainable without proof of such knowledge (Laverty *v.* Hogan, 1 *N. Y. State Rep.* 84). The reason of the law is that a dog is a domesticated animal, and the defendant had a legal right to keep one about his premises, having the right to assume that the dog would behave as a good dog should; but after he has committed the impropriety of biting, and the master is informed of the animal's vicious propensity, he keeps the dog thereafter at his peril. A person has as much right to keep a dog as he has to keep a cat, a cow, a horse, or other domesticated quadruped, although their habits differ. The cat keeps mostly in-doors, while the dog is known to be a great pedestrian, fond of out-door exercise; and there is no law which prevents the dog from entering upon and using the public highways whenever his inclinations or necessities require it to use the same. There are provisions of the statute regulating estrays, which forbid "cattle, horses, sheep, swine or goats," from running at large or pasturing on the highways of the State (*Cowen's Tr.* Kingsley's ed. ? 533); but I find no such provision in regard to dogs, which seem to have the liberties of the highways. In this view of the law, the defendant's dog was not a trespasser when he left the defendant's yard and entered upon the highway, for he had the right to go there.

"This leads to the logical conclusion that the defendant is not liable for what the dog did on the highway, in the absence of proof that he, defendant, knew that his dog was accustomed to attack man or beasts, who were passing his premises; and there is no evidence establishing such knowledge.

"The legislature has dispensed with proof of *scienter*, where the

injury is done by dogs to 'sheep or lamb ' (3 *R. S.* 7 ed. 2117, § 9). The fact that the legislature dispensed with this proof as to sheep or lamb, is indicative of an intention to leave attacks upon other animals or upon human beings to be governed by the common law rule in regard to *scienter.*

"In Dickson *v.* McCoy (39 *N. Y.* 400), the defendant allowed his horse to go unattended through the streets of Troy, and it kicked the plaintiff in the face. The horse was accustomed to run and play in the streets while unattended, and the court held that while this was no evidence of a mischievous disposition, it was one liable to produce mischievous results. GROVER, J., said in that case : 'The owner is not liable for permitting his domesticated animal to be at large when he has no reason to apprehend that any injury to others will result therefrom. If he has such reason, he is liable. In that case, the defendant had notice, that his horse, when at large, was in the habit of running and kicking upon the sidewalk. These acts he must have known were dangerous to others ;" and it was in consequence of this known danger that the judgment against the owner of the guilty horse was affirmed.

"In the present case, the defendant had the right to suppose that his dog would behave itself while on the public highway, for there is no proof that he had ever been guilty of any previous misconduct, to the defendant's knowledge. The defendant insisted in the court below that there was no proof of *scienter*, and that such proof was necessary to sustain the action, and that without it the action must fail. He moved to dismiss the complaint upon this ground, but the motion was denied under exception.

"This evidence was necessary to warrant the judgment of the justice, and, for the want of it, his judgment must be reversed, with costs. "

### Criticism.

*The London Truth* (of November 12, 1885), in an editorial comment on a recent decision, said : " I have never understood why, if my neighbor's dog bites me, I should be unable to obtain satisfaction until I have shown that the dog had previously bitten some one else. Such, however, is the law on this important subject. "

The reason of the law is that the neighbor, knowing nothing to the contrary, has the right to assume that the dog will behave as a good dog should, but, after he has committed the impropriety of biting the adjoining tenant, and the master is notified of the animal's vicious propensity, he keeps the dog thereafter at his peril.