THALHEIMER *v.* LEMPERT.

(*Supreme Court, General Term, Fifth Department.* June 23, 1888.)

1. LANDLORD AND TENANT—DUTY OF TENANT TO REPAIR—ABANDONMENT OF PREMISES.
   Plaintiff leased a house to defendant for five years, without covenanting for repairs, but, by agreement, put in a bath-room, water-closet, and furnace. Defendant, after two years, abandoned the premises owing to a stench caused by defective plumbing, and by the want of a cold-air box to the furnace, which rendered the house untenantable. *Held*, that the means to remedy these defects did not come under the ordinary repairs which the lessee must make; and as the plaintiff, on request, failed to remedy them, he was chargeable with constructive eviction, and defendant was justified in abandoning the premises.

2. APPEAL—REVIEW—SUFFICIENCY OF EVIDENCE.
   Where the evidence presents a question of fact, a judgment of the county court affirming that of a municipal court will not be reversed.

Appeal from Monroe county court.

Action by Yette Thalheimer against Morris W. Lempert, defendant, for rent, in the municipal court of the city of Rochester. Judgment was rendered for defendant, which the Monroe county court affirmed on appeal. From the latter judgment plaintiff appeals.

Argued before HAIGHT, BRADLEY, and DWIGHT, JJ.

*J. S. Garlock*, for appellant.  *David Hays*, for respondent.

BRADLEY, J.  The action is to recover rent of a dwelling-house rented to the defendant by a lease made in February, 1884, for the term of five years from the 1st of April following.  The defense is that the building became untenantable; that he was deprived of the beneficial use of the premises by the failure of the plaintiff to repair; and that he was compelled to and did abandon them.  It appears that the defendant did leave the house in December, 1886, and then sent to the plaintiff the rent up to that time, which the plaintiff declined to accept as such payment.  The lease did not, by its terms, provide for any repairs; but the evidence tends to prove that it was understood that the plaintiff would put in a furnace, bath-room, water-closet upstairs, and two wash-basins, and paint and paper the house; all of which was done after the defendant went into possession.  The main cause of the complaint and abandonment by the defendant was that there was an uncomfortable stench in the house, issuing, as is claimed, from the sewer with which the pipes from the house were connected; also that there was no cold-air box connected with the furnace.  The evidence tends to prove that such was the condition, and for these causes the house was rendered unhealthy; and the conclusion was warranted that, as a consequence, the house, with the continuance of those causes, was untenantable.  Some of the members of the defendant's family were sick; and how far, if to any extent, their illness was caused by this condition, does not appear.  The defendant says that he requested the plaintiff's agent to remedy these defects, and told him that his doctor said the house was unfit to live in.  The evidence enabled the court to determine that the causes of the condition complained of were produced by the defective plumbing and heating apparatus put in by the plaintiff after the defendant went into possession under the lease, and therefore it may be said that the building was rendered untenantable by the work of the plaintiff while the defendant was in occupation as tenant; and it is contended by his counsel that this condition came within the statute which provides that a lessee of a building which shall, without any fault or neglect on his part, "be so injured by the elements or any other cause as to be untenantable, and unfit for occupation, shall not be liable to payment" to the lessor after such injury, and may thereupon quit and surrender the possession.  Laws 1860, c. 345.  This statute, by its terms, seems to contemplate that, to give the tenant the means of protection against liability for rent, there should be an injury to the building which so substantially affects the enjoyment of it by the tenant as to render it untenantable; and such injuries as come within the meaning of "ordinary repairs," when the landlord has not by the lease assumed the obligation to make them, are not within the statute, because it does not modify the relative duties of the parties to the lease in that respect.  This was all that was necessarily determined upon the facts in *Suydam* v. *Jackson*, 54 N. Y. 450; and the views expressed in the opinions then delivered, beyond that, were not required by them.  The case was properly decided, as there the landlord did not undertake to make repairs, and the duty rested upon the lessee, for the protection of his enjoyment of the premises, to make ordinary repairs.  It is quite questionable whether the fact that the enjoyment of the premises has become so impaired as to make them untenantable brings the case within the statute, unless the condition can in some sense be attributable to an injury to the building.  The authorities upon the subject do not necessarily extend the construction of the statute so as to embrace all conditions which render the demised premises untenantable without any fault of the lessee.  *Vann* v. *Rouse*, 94 N. Y. 401; *Butler* v. *Kidder*, 87 N. Y. 98; *Francke* v. *Youmans*, 17 Wkly. Dig. 252.

It is assumed, upon the evidence, that there was a stench from the sewer so deleterious to the health of the occupants as to render the building in that sit-

uation untenantable; and that this was occasioned by connecting drainage pipes, defectively put in by the plaintiff after the defendant became the occupant. In the view taken of the case, we deem it unnecessary to and do not express any opinion upon the question whether this condition came within the statute referred to. The plaintiff was requested, considerable time before the defendant left the premises, to so fix these drain-pipes as to relieve the occupants of the house from the unhealthy odor. This the plaintiff wholly failed to do. Assuming that the difficulty came from defective construction by the plaintiff, the requisite means to remedy it did not come within ordinary repairs which the lessee was required to make to protect his enjoyment of the premises. Such repairs are those of restoration, and such as are required to preserve the property in the condition it was placed by the landlord, with proper allowance for depreciation by use, and the effects of time upon it. This does not embrace the modification or completion, if uncompleted, or defective construction. If it did, there might be very onerous burdens, in some cases, upon the tenants. The duty was upon the plaintiff to give protection to the enjoyment of the house by the defendant against the consequences of this defective plumbing; and, refusing to do so when the house, in consequence, became untenantable, the plaintiff was chargeable with constructive eviction, which justified the abandonment of the premises by the defendant. *Bradley* v. *Goicouria*, 67 How. Pr. 76; *Lawrence* v. *Burrell*, 17 Abb. N. C. 312. In *Thomas* v. *Nelson*, 69 N. Y. 118, 121, the matter of complaint was a defective flue; and EARL, J., in delivering the opinion of the court, remarked: "There was a defective flue, which made the occupancy of the premises extremely uncomfortable and inconvenient, and the defendant would probably, on this account, have been justified in abandoning them as untenantable." But there he was denied that right because the jury was permitted to find, and it was assumed they did find, that, before he left the premises, he had made an agreement with the plaintiff to repair the flue at the expense of the latter. This is a recognition of the principle before stated. And in *Alger* v. *Kennedy*, 49 Vt. 109, 24 Amer. Rep. 117, the doctrine is repeated that, when the premises became untenantable by reason of the failure of the lessor to do what is lawfully required of him, the effect is eviction which permits the lessee to leave them. That case involved the question of repair; and the duty of the lessor to make it depended upon the fact that the place where repair was necessary was not in the part of the premises in the possession of the tenant.

It is, however, contended by the plaintiff's counsel that the cause of the uncomfortable condition in the case at bar was the clogging up of the drainage pipes by the use made of them by the occupants of the house. If the trial court had so found the fact, the plaintiff would have been entitled to recover, because the remedying of that difficulty would have been within the repairs which the tenant was required to make. And, in support of that view, the plaintiff gave evidence quite strongly tending in that direction; but it cannot be said that there was no evidence in support of the position that the difficulty and cause of the complaint was not in, and the consequence of, the defective construction of the drains. We think the evidence was such as to present a question of fact for the trial court; and in such case this court does not, upon the mere weight of evidence, reverse the judgment of the county court affirming that of the municipal court. *Burnham* v. *Butler*, 31 N. Y. 480; *Wiley* v. *Slater*, 22 Barb. 506. There appear to have been no errors in the rulings of the court, to the prejudice of the plaintiff, in the reception of evidence, made available by objection. The judgment should be affirmed.

HAIGHT and DWIGHT, JJ., concur.