Hatch, J.,
(dissenting.)—This is an action to recover rent of certain premises. The defense is eviction, by affirmative "act of the landlord. The cause was tried by a jury, and the court submitted to them the question whether the property, after entry by the tenant, had become unfit for use and untenantable, and as a necessary inference flowing therefrom, whether plaintiff had abandoned said premises on account thereof. Under a charge by the court, which the parties acquiesced in, the jury found a verdict in favor of defendant of no cause of action. Upon motion for a new trial, the court held and decided that it should have directed a verdict for plaintiff, and therefore set aside the verdict and granted a new trial. It appeared upon the trial, without dispute, that defendant entered into possession of said premises under, and by virtue of, a written lease, executed on the 26th day of April, 1886, whereby said premises were leased to him for and during the term of three years, at an annual rent of $800, payable monthly in- advance, said term to commence on the 1st day of May then next ensuing. Defendant did not, in fact, enter into possession until about May 16, 1886, when he paid a month’s rent, and continued thereafter to pay said rent, on or about the 15th of each month, up to and including the month of April, 1888. On the 28tli day of said last named month he abandoned said premises, refused longer to occupy the same or pay rent. The premises rented consisted of a ground floor, connected with a hotel, which was used by defendant as a bar-room for the sale of liquor. There was no cellar underneath the samé, and at the time of entry defendant made no examination of their condition with respect to sewerage. Defendant’s testimony tended to show that some two or three months after entry, while engaged in fixing a place underneath for his coal, he discovered an offensive smell, and further investigation developed an open sewer running underneath his premises, forty or forty-five feet in length, about eight inches wide, and a foot and one-half deep, with plank at the bottom and sides. This sewer connected with the main sewer in Michigan street, on which said premises fronted, and was used to convey the sewerage from said hotel, all lateral sewers therefrom emptying therein. The hotel had capacity for 150. people, and entertained upon an average forty persons a day. There were seven or eight water-closets therein, all of which connected with the sewer and emptied their contents therein.
At the time defendant discovered said sewer it was filled with *875 human excrement, and emitted a noxious and offensive odor^ which permeated his premises; lie cleaned it out, but was unable to entirely remove the smell From time to time the sewer was cleaned out by defendant, and also by plaintiff, but it filled up from the closets, and required attention once or twice a month, depending upon the number of guests accommodated in the hotel. By reason of the offensive and noxious gases arising therefrom, defendant was made sick, lost flesh, and was finally compelled to leave. Complaint was made to the board of health by defendant a short time prior to the surrender, and the premises were examined by the physician of the board, at or about the time defendant left, and said physician testified that said sewer was detrimental to the health of persons occupying said premises. Upon this testimony I am of opinion that the cause was properly submitted to the jury, and that their determination is final upon the question involved. It is a general principle of law, stated many times in many cases, that if the landlord, after entry by the tenant, creates a nuisance or suffers one to be created upon the demised premises, or is guilty of such acts as interfere with the substantial use and beneficial enjoyment of the demised premises by the tenant, and on account thereof the tenant abandon the same, no rent can be recovered therefor from the date of abandonment. Truesdell v Booth, 4 Hun, 100; Thalheimer v. Lempert, 17 N. Y. State Rep., 346; Edwards v. Candy, 14 Hun, 596.
This rule is conceded, but the claim is made that inasmuch as the lease provided that the defendant should keep the premises clean and in repair, therefore the duty devolved upon him to keep the sewer open and clear so often as the same should become stopped up. Ho case is cited where thatdoctriue, as applicable to the facts here disclosed, has been upheld. I am of opinion that the rule finds no application to the present case. There is no rule of law where it is made the duty of the tenant to remove or abate a nuisance so often as his landlord shall create one. The duty to keep the premises clean or in repair relates to the removal of such dirt or filth, or the restoration of decay arising from natural causes as in the use of the premises is created naturally or by the tenant. As to such he is responsible, as it comes by his act, either carelessly or necessarily in the use; but to say that suUl duty is imposed when the nuisance is created by the landlord, and over which the tenant has no control, is to assert a doctrine beyond any adjudicated case, or within the reason of any rule which requires the tenant to keep the premises rented clean.
It would scarcely be claimed that if the landlord dumped each morning a load of night soil at the front door of his tenant, that the requirements of the lease absolutely imposed the duty upon the tenant to remove the same under the clause that he must keep the premises clean. Yet I can see no distinction between such an act on the part of the owner and one where he permits, from his adjoining structure, filth and night soil to run under the premises of the tenant, accumulate and permeate the same with offensive and dangerous gases. Hor do I think the situation changed because one should be hauled on a wagon and dumped, *876 and the other run down and accumulate. The result is the same in each case. Such act seems to bring the case within the adjudicated cases. And if in the one case it would justify abandonment, I do not see why it does not in the other. The gravamen of the charge is the creation of a nuisance, and the manner of its creation is of no moment, if it exists. As to that no authority is needed to show that the accumulation of night soil underneath another’s premises, from which escape offensive odors and noxious gases, deleterious to health, is a nuisance. The learned court, in granting the motion for a new trial, proceeded upon the theory that the cause of the nuisance was the result of other, conditions than plaintiff’s sewer or closets, i. e., was due to high winds, which forced the water back from the mouth of the sewer at its junction with the canal, and thus caused an overflow under the premises occupied by defendant, creating the nuisance complained of. That as the parties had stipulated in the lease for a single cause of abandonment by the tenant, that of fire, all other causes were expressly waived by the tenant, and as the alleged cause of surrender was not embraced in the contract, no cause existed to suspend the payment of rent. It is needless now to discuss, if it be assumed, that the damage resulted in the way pointed out. Whether defendant could avail himself of the provisions of the statute of 1860, or whether he could rely upon the facts as sufficient to constitute an eviction at common law, it is here sufficient to say that the record presents a disputed question of fact, the testimony upon the part of defendant tending to prove the facts already stated, and upon the part of plaintiff tending to prove the facts upon which the theory of the court was based. As to these conflicting questions, the jury were the judges, and the evidence warranted the verdict rendered. The order granting a new trial should, therefore, be reversed, and judgment ordered for the defendant upon the verdict.
Beckwith, Oh. J., for affirmance on opinion of Titus, J., at special term.
Judgment affirmed.

 Affirming 31 N. Y. State Rep., 443.