(14 Misc. Rep. 368.)

## WOODBRIDGE v. MARKS.

(Supreme Court, Special Term, St. Lawrence County. November, 1895.)

VICIOUS DOG—ACTION FOR INJURIES INFLICTED BY—PLEADING.
    In an action for injuries inflicted by defendant's dog, the complaint need not allege any active participation by defendant in the injury, or any act of negligence on his part.

Action by William R. Woodbridge against William D. Marks to recover damages for injuries inflicted by defendant's dog. Defendant demurs to the complaint. Overruled.

McLaughlin & Rowe (John C. Keeler, of counsel), for plaintiff.
Hand, Kellogg & Hale (R. L. Hand, of counsel), for defendant.

RUSSELL, J.    The defendant demurs upon the merits to the complaint. The complaint avers that the defendant wrongfully kept several fierce and dangerous dogs, well knowing them to be ferocious, vicious, and of a mischievous disposition, and accustomed to attack and bite mankind; that on the 10th day of May, 1895, the said dogs, or some of them, while in the keeping of the defendant, as aforesaid, attacked and bit the plaintiff, and severely wounded him. It will be observed that no allegation is made, in addition to the statements of fact as to the character of the dogs and their maintenance by the defendant, of any active participation by the defendant in the injury, or of any act of negligence on his part. Is it necessary to add an allegation of this character to the complaint in order to justify recovery? There has been much discussion in the books as to the standing of the dog, both as to the right of ownership in him and the limitations under which he may be kept and used. He has become now, if he had not before, a recognized article of property, and adopted from the wild state into that of feræ domesticæ. As a pet, companion, watch dog, or herder he has his uses, sentimental or otherwise. For his courageous and faithful qualities he has been admired by all walks of mankind, and immortalized by eminent writers. More than 300 years before the Christian era, Socrates said of him, "When I see some men, I love my dog the more," and early in the present century Lord Byron wrote of him:

> "But the poor dog, in life the foremost friend,
> The first to welcome, foremost to defend."

And again:

> " 'Tis sweet to hear the watch dog's honest bark
> Bay deep-mouthed welcome as we draw near home."

At the present day this animal is one of those which are protected by the philanthropy of the society which believes and maintains that the lower animals should be shielded from cruelty as well as the human animal. He is thus recognized as entitled to his proper place in the economy of civilization. But what is that place? The answer to this inquiry may solve not only the rights of the animal himself as a dog, but also the rights of his owner to use and keep him. One of the ablest of the opinions in the jurisprudence of this state upon this subject is written by the late Justice W. F. Allen as far back as 1856, in the case of Wiley v. Slater, 22 Barb. 506. In that case the defendant had a dog evidently of superior ability in the fighting line to that of the dog owned by the plaintiff, so that in a fierce contention upon the merits of the respective animals the defendant's dog succeeded in depriving the plaintiff's dog of his existence. Being a supposably valuable dog, the plaintiff sued the defendant, and recovered for the value of his dog. It became, therefore, necessary for the general term, upon an appeal being taken from the affirmance by the county court of the justice's judgment, to determine whether, prima facie, the fact of the killing justified the recovery, there being no evidence as to which dog was originally the aggressor. Justice Allen frankly confessed his incompetency to speak by authority of the code duello of dogs. He recognized, however, and judicially adopted the poet's commentary on the nature of dogs:

"That dogs delight to bark and bite,
For God hath made them so,"

—And judicially announced the rule that, when dogs fight in pursuance of their disposition to do so, the mere killing of one dog by another does not justify a recovery, and that the owner of the slain dog is entitled only to the salvage, consisting of the skin of the deceased. He, however, limits the application of the rule laid down by him by the statement that there was no proof in the case that the dog triumphant was of a vicious or dangerous disposition, and the implication fairly is that, if this kind of a character had been proven to exist in the surviving dog, the trial court might have been justified in its judgment. This was a case to determine the responsibility of the owner in a controversy between dog and dog. The rule should be stronger as against the owner of the offending animal where the victim of the propensities of the dog is a human being. Conceding the highest place here or hereafter to this companion of man which is claimed by any one, even to the faith of the Indian:

"That in the happy hunting grounds
His faithful dog shall bear him company,"

—Still in the walks of life he must give way to the interests of man. Whether this be so or not, as a question of pure ethics, it is so recognized by man-made law in courts administered by man. As against the dog, man has the right of way. It is not a presumption of law or fact that a human being is of a fierce, vicious, or dangerous disposition. It is as yet the belief of mankind, recog-

nized and acted upon, that the ordinary nature of human beings has the proper elements of kindness and justice. It therefore seems to be a necessary deduction that when a fierce, vicious, dangerous animal, accustomed to bite mankind, attacks and wounds a human being, the presumption is that the dog is the aggressor and the offender, which presumption may, of course, be rebutted, but, without rebutting proof, must be acted upon as well founded.

Starting with this presumption, as between the dog and the man, that the facts stated show the dog to be in the wrong, what is the presumed liability of the owner? It is an undoubted fact that owners have a right to keep fierce and dangerous dogs for the protection of their premises, if so guarded that they will inflict no injury, except in unusual emergency, which justifies their resort to nature's weapons in defense of their master's belongings. Such a state of facts may well be a justification to the owner as well as the dog. But it is not to be presumed without proof, and therefore, upon the ground that where a fierce, vicious, and dangerous dog, accustomed to bite mankind, known to be such by the owner, attacks and wounds a human being, the burden lies upon the master to show the provocation or excuse, this controversy is decided. The demurrer in this case is overruled, with costs, with leave to answer within 20 days on payment of the costs.

Demurrer overruled, with costs, with leave to answer.