Oakes et ux. *v.* Spaulding et al.

HENRY OAKES AND EFFIGENE OAKES, HIS WIFE, *v.* C. M. SPAULDING
AND WILLIAM E. OAKES.

*Rams. Joint Owners.*

The owner of a ram, knowing of its propensity to butt persons, is bound so to
secure it as to keep it under safe restraint.

A joint owner of a ram is chargeable with damage done by it by butting while in
the pasture of his co-owner, although the latter, of his own accord, and without
permission of, or consultation with, the former, and in his absence, took the ram,
and put it into his pasture, where the injury was done, without trying to restrain
it, the former having given no directions as to restraining the ram, and not hav-
ing been consulted as to the keeping, care and management of it.

ACTION on the case to recover for an injury done by a ram. No
defence was made by the defendant, Oakes—Spaulding, alone,
defended. Trial by jury on the general issue, at the September
Term, Chittenden County, PIERPOINT, Ch. J., presiding.

It appeared, without dispute, that the plaintiff, Effigene Oakes,
who is the wife of the other plaintiff, while engaged, by direction of
her husband, in driving his cows from a pasture, was, without fault
on her part, violently attacked by a ram, and seriously injured.

The defendant, Spaulding, had no interest in, nor control over, the
pasture; but the same was owned, possessed and controlled exclu-
sively by the defendant, Oakes, by whose permission the cows were
lawfully in the pasture at the time of the injury complained of.

The defendants were joint owners of the ram at the time in ques-
tion, and had been such owners since some time in the preceding
spring, and during all that time were aware that the ram had an
unusual propensity to butt, and had, on several previous occasions,
attacked and butted persons.

After the defendants became joint owners of the ram, he was kept
by the defendant, Spaulding, on his own premises, down to the period
next mentioned.

The testimony on the part of Spaulding, tended to show that about
two weeks previous to the injury to Mrs. Oakes, the sheep of the two
defendants were washed together; and the defendant, Oakes, of his

own accord on that occasion, and without permission of, or consultation with, Spaulding, and in his absence, took the ram, and put him into the pasture aforesaid, where he remained until the time of the injury to Mrs. Oakes, taking no measures to prevent the ram doing damage ; the defendant, Spaulding, during all that time being wholly ignorant of the place at, or manner in, which the ram was kept, giving no directions as to his being restrained from doing damage, nor being consulted in respect to the keeping, care, or management of the ram ; and not knowing that the plaintiffs' cows were being kept on any land belonging to William E. Oakes, but soon after Oakes so took the ram, Spaulding was informed of it, and made no objections, and gave no directions.

The defendant, Spaulding, requested the court to instruct the jury that as William E. Oakes was one of the joint owners of the ram, if he, without any direction from, or consultation with, Spaulding, and without his knowledge, took the ram and, placed him in the pasture aforesaid, and there kept him until the injury to Mrs. Oakes, Spaulding would not be responsible to the plaintiffs in this action.

The court refused to so charge, and did, *pro forma*, instruct the jury, among other things not excepted to, that as the defendants became joint owners of the ram for their mutual benefit, his keeping, when not in actual use, was for their joint benefit. That knowing of his propensity to butt, it was the legal duty of each defendant to see to it that the ram was at all times restrained and prevented from doing injury. That it was immaterial whether the ram was in the actual possession and custody of the one or the other defendant at the time of the injury complained of in this action ; and that, even if the ram was taken and kept by the defendant, Oakes, under the circumstances, and in the manner Spaulding's testimony tended to show, this would not excuse him from the duty of seeing that the ram was properly restrained, nor from the responsibility for the injury.

Verdict for the plaintiffs against both the defendants for one thousand five hundred dollars damages.

To the refusal to charge as requested, and to the charge as above detailed, the defendant, Spaulding, excepted. The charge in other respects was such as the case called for.

*Hard & Shaw,* for the defendant, Spaulding.

If the defendant, Spaulding, is made chargeable for the injury complained of in this case, it must be either upon the ground of *negligence,* or by reason of his *interest in the animal* which caused the injury.

I.   It may be stated, as a principle of general application, that no person can lawfully be made responsible for negligence, except that of himself, personally, or some one who represents him, at least *pro hac vice.*

If Spaulding is held liable in this case upon the ground of *negligence,* it must be upon the anomalous principle, that a person may be made liable for negligence not of himself, nor of any one in any sense representing him, but of persons acting in their own right, and wholly independent of him, and over whose conduct he has no legal control.

II.   Is Spaulding responsible merely by reason of his *interest in the animal?*

The general rule which subjects the owner of a mischievous and dangerous animal to responsibility, *prima facie,* for injuries done by such animal after the owner is informed of its dangerous propensity, without averring or proving negligence on the part of such owner, need not be questioned in this case.

Admitting (which we do not) that the presumption of negligence in such cases, is one of *law,* which cannot be controverted, the rule is wholly inapplicable to the present case.

This rule is founded upon the idea, that, if after knowing the dangerous propensities of an animal, the owner elects to keep it, it is but reasonable to presume that injuries done by such animal were the result of negligence on the part of the owner.

The rule, however, pre-supposes that the owner against whom such a presumption arises, has the legal right and authority to *keep and manage* the animal at the time of the injury, or to destroy it if he chooses ; and such was the fact in the cases to which the rule has been applied, being cases where the animal was owned by *one* person only, and was under his actual exclusive control.

The rule and the reason of it, are alike inapplicable to a case like the present.

If ownership of, or interest in, an animal of this description is *per se*, the test of liability for injuries done by such animals, is it a *universal* test, irrespective of the amount of interest, the manner of its acquirement, or the time of its enjoyment ?

Suppose Spaulding's interest in the ram had extended to only a thousandth part, or that he had acquired his interest by inheritance or by will, without having exercised or asserted any right or title to the animal under it, or that his interest was in remainder, or the ram, at the time of the injury, had been in the actual custody of a sheriff by virtue of an attachment against Spaulding, would he be held liable in all these cases ?

*L. F. Wilbur, G. F. Edmunds* and *Jeremiah French,* for the plaintiffs.

The basis of the action is the non-performance by the defendants of the duty to absolutely, and at all events, restrain their ram. This duty arose out of their joint property in, and possession of the beast. The keeping such an animal, after notice of its ferocious propensities, was a tort in which both were participants. The act was single and was the occasion of the injury to Mrs. Oakes, and both the defendants are therefore liable. The action is *case,* and is not to be confounded with actions of trespass for separate acts and torts done by two or more defendants. Then, if there has been no concert, there is no joint liability. Here the keeping the ram secure was a duty enjoined upon both the defendants, and the failure to do so was a joint tort ; and the rule is universal that where an injury has resulted from the concurrent wrongful acts of, or the non-performance of a common duty by several persons, all are liable jointly. *Linton* v. *Hurley,* 14 Gray. 191 ; *Smith* v. *Pelah,* 2 Strange, 1264 ; *Jenkins* v. *Turner,* 1 Ld. Raymond, 109 ; *Jackson* v. *Smithson,* 15 M. & W. 563 ; *Card* v. *Case,* 5 M. G. & S. 622 ; *Brown* v. *Carpenter,* 26 Vt. 638 ; *Popplewell* v. *Pierce,* 10 Cush. 509 ; *Fletcher* v. *Rylands,* Law Rep. July, 1866, 263 ; *Rossell* v. *Cottom,* 31 Penn. 525 ; *McCaskill* v. *Elliott,* 5 Strobh. 591 ; *Kelly* v. *Wade,* 12 Irish Rep. 424 ; *May* v. *Burdett,* 9 Ad. & E. N. S. 101 ; *M. Kone* v. *Wood,* 5 C. & P. 1 ; *Smais* v. *Dale,* Hob. 120 ; *Doe* v. *Prosser,* Cowp. 217 ; *Wiswall* v. *Wilkins,* 5 Vt.

Oakes et ux. *v.* Spaulding et al.

87; *Wilkins* v. *Burton*, 5 Vt. 76; *Catlin* v. *Kidder*, 7 Vt. 12; *Welch* v. *Clark*, 12 Vt. 685; *Sanborn* v. *Morrill*, 15 Vt. 700; *Buckmaster* v. *Needham*, 22 Vt. 617; *Barton* v. *Burton*, 27 Vt. 93; *Johnson* v. *Goodwin*, 27 Vt. 288; *Wait* v. *Richardson*, 33 Vt. 190; *Spencer* v. *Austin*, 38 Vt. 258.

The opinion of the court was delivered by

BARRETT, J. This action is brought to recover damages for an injury to Mrs. Oakes done by a ram that was jointly owned by the defendants, both of whom had been, for a considerable time, " aware that the ram had an unusual propensity to butt, and had, on several previous occasions, attacked and butted persons." The defendant, Oakes, made no defence. Spaulding only is defending. Without bringing into consideration other elements of the case at this stage of the discussion, it seems proper, in the first place, to determine what duty and liability the law imposes on the owner of such a beast, who has knowledge of such propensity and habit in it. And, we think, the true view is well stated in the opinions, taken together, of Barons PLATT and ALDERSON, in the case of *Jackson and Wife* v. *Smithson*, 15 M. & W. Ex. R. 561. PLATT, B., said, " No doubt a man has a right to keep an animal which is *ferae naturae*, and nobody has a right to interfere with him in doing so, until some mischief happens; but as soon as the animal has done an injury to any person, then the act of keeping it becomes, as regards that person, an act for which the owner is responsible." Applying this principle in a case in which such a ram was the subject, ALDERSON, B., said, " In truth there is no distinction between the case of an animal which breaks through the tameness of his nature, and is fierce, and known by the owners to be so, and one which is *ferae naturae*." In the case of *Brown* v. *Carpenter*, 26 Vt. 638, a ferocious dog was the subject, Ch. J. REDFIELD, said, " his being in the presence of his keeper affords no safe assurance that his known propensities will not prevail over the restraints of authority." That is the case often with men, and always liable to be with ferocious animals, as is said by one judge, " I think sufficient caution has not been used. One who keeps a savage dog is bound so to secure it as to effectually prevent·

it doing mischief." These expressions convey what this court regard as the true idea of the law on this subject—treating the words " *keeper*" and " *keeps*," as referring to the person who is chargeable with the duty of keeping the beast under safe restraint. The origin, development, and application of the law, in this respect, is well shown in the arguments of counsel, and notes, and the opinions of the judges, as the case is reported in *Card* v. *Case*, 57 E. C. L. 622. *Popplewell* v. *Pierce*, 10 Cush. 509, is to the same effect. These cases so fully bring to notice the learning of the subject, that further special references seem not to be required.

As resting on the relation of ownership solely, unmodified by peculiar circumstances, it would be the clear duty of the owner of such animal effectually to restrain it from practicing its favorite propensity upon persons who, otherwise, might accidentally, and without fault on their part, be exposed to its assaults. And no distinction can be made, as to this duty, between sole and joint owners. What is the duty of the sole, is equally the duty of the joint owners ; and what is the duty of one joint owner, is equally the duty of the other, as to third persons, unless the peculiar circumstances of the given case should relieve the one or the other from that duty. This brings us to enquire whether, what is shown in this case thus relieves Spaulding from that duty. In this connection, let it be noted that we are not undertaking to decide questions in cases not yet in existence ; and so, are not deciding what, in supposed cases, might operate to relieve an owner, either sole or joint, from the duty of effectually restraining such an animal.

The ram had been kept by Spaulding up to the time of sheep-washing that spring. It is to be inferred that he assented to the washing of the sheep together. It does not appear that the defendant, Oakes, acted in contravention of any right of Spaulding, as between themselves, as joint owners, in putting the ram into his own pasture, instead of taking it back to Spaulding's pasture. Oakes, in virtue of the joint ownership, had the same right to have the ram in his own pasture, as Spaulding had to have it in his, and that right did not depend on expressed permission by the one to the other. In which ever pasture it was, the duty resting on the owners of its effectual

Oakes et ux. *v.* Spaulding et al.

restraint followed it.　They sustained the relation of joint ownership voluntarily, and they thereby became charged with the correlative duty, and such duty rested on each personally.　It was the incident result of the relation that, as between themselves, either might lawfully have the custody of the property, and such custody as to third persons, as touching the rights and duties springing from ownership, was the custody of both.　It inured to the benefit of both with reference to rights of property ; it charged both with commensurate duties in reference to it as property.　Now, it is noticeable that the case does not show that Oakes did any thing to prevent Spaulding from having full co-operation, either by advice, direction, or acts, in the mode of keeping the ram.　All that it shows, either by statement or inference, is, that Spaulding did nothing about it after the sheep-washing—not so much as to enquire, or interest himself to know where, or in what manner, his fellow-owner was keeping the ram. Being an owner of it, and knowing its propensity and habit of doing violence to persons, and being charged with the duty of effectually restraining it, and, without protestation or counter effort, permitting it to be in the pasture of his co-owner, and voluntarily remaining ignorant both of the place and manner in which it was kept, and, under these circumstances, it committed the alleged act of violence and severe injury, he failed utterly to fulfil the duty resting upon him, and stands as nakedly chargeable with liability for the damage done, as if he alone had owned both the ram and the pasture in which the injury was done.

To this view of the case the instructions of the county court to the jury were applicable, and, we think, they were clearly correct.

The judgment is affirmed.