WILSON I. LETTIS, APPELLANT, *v.* NORMAN HORNING, RESPONDENT.

*Vicious bull — liability of the owner, with knowledge of its vicious propensity, while it is in the possession of a bailee.*

Where, under a contract to take and work a farm on shares, the tenant takes possession of a bull belonging to the owner of the farm, for the owner's sole benefit, so that the bull is in his possession, not as a lessee but as a bailee of the owner, and on the bull's becoming vicious and dangerous the bailee informs the owner of the fact, who refuses to care for the bull or to consent that proper measures be taken to prevent him from doing mischief, the owner will be liable for an injury thereafter inflicted by the bull, while in the bailee's possession, upon a third party.

If, under the contract in such a case, the tenant and owner are tenants in common of the bull, the owner will also be liable.

APPEAL by the plaintiff, Wilson I. Lettis, from a judgment of the Supreme Court, in favor of the defendant, Norman Horning, for costs, entered in the office of the clerk of Montgomery county on the 26th day of September, 1892, on the dismissal of the complaint, by direction of the court at the Montgomery Circuit.

*H. Dunckel* and *A. J. Nellis*, for the appellant.

*H. M. Eldridge* and *Z. S. Westbrook*, for the respondent.

PUTNAM, J.:

This action was brought to recover damages for injuries received by plaintiff from a vicious bull owned by the defendant. Plaintiff was an employee of one William Kelly, who, by written contract, took the defendant's farm for one year from March 1, 1891, to work on shares. The contract provided that defendant should have twenty cows, *now on said farm*, one bull, three hogs, etc. Kelly was to work said farm and take good care of the cows and stock. The milk, butter and cheese to be divided between the parties. Kelly took possession of the farm, under the contract, on March 1, 1891, and of the twenty cows and a bull left there by the defendant.

There was evidence that plaintiff was seriously injured by the bull, and also that defendant knew of the dangerous character of the animal prior to the injury. The trial judge granted a nonsuit on the ground that, under the contract, Kelly had the sole control of the animal. That it was a proper one when first furnished, and afterwards became vicious. That it was the duty of Kelly to take care of it. He had the absolute control, and could hamper or shut it up whether the owner consented or not. That while Kelly was so in possession and had control of the animal, the liability for plaintiff's injury, if any, was his and not that of the defendant.

It is not clear that the trial judge was correct in stating that it was conceded that the bull was a proper one when delivered to Kelly. The occupancy of the latter commenced on March 1, 1891. Testimony was given on the trial showing that during the latter part of that month the bull was vicious and dangerous. This being so it may be doubted whether the animal was not also dangerous during the first of the same month.

Under the contract between plaintiff and Kelly to work the farm on shares the bull was not *leased* to the latter, but was in his pos-

session as a *bailee.* The trial judge properly held that Kelly "was paying part of his obligation to Mr. Horning for the lease of the property, by seeing that the cows were properly served with the bull, so that they would come around the ensuing season. Mr. Horning furnished the bull for that purpose." This is undoubtedly a correct view of the contract and shows that Mr. Kelly kept the animal for the benefit of Mr. Horning.

Hence this case differs from *Atwater* v. *Lowe* (39 Hun, 150) and *Van Slyck* v. *Snell* (6 Lans., 302). In those cases the cattle had been rented to the tenants for a term of years, and the latter had the sole control and charge and possession of said stock for their own benefit. In this case Kelly was merely the keeper of defendant's bull for defendant's sole benefit. Also, the cases of *Ryan* v. *Wilson* (87 N. Y., 471); *Mellen* v. *Morrill* (126 Mass., 545); *O'Brien* v. *Greenbaum* (23 N. Y. St. Rep., 405) cited by defendant were cases in which the real estate in question had been leased by the owners for a period, and it was held that the owner having parted with the possession and control of the property, was not liable for an injury caused by its condition during the period of the tenancy. In this case, as we have seen, while possession of the dangerous animal was given to Kelly, it was given to him for the benefit of defendant, and Kelly took said property not as a lessee, but rather as bailee of Mr. Horning.

*Marsh* v. *Hand* (120 N. Y., 315) was a case somewhat similar to the one under consideration. In that case one Hand was sued as the owner, and Cumber as the party working the farm on shares, and to whom, under the contract between the parties (which was similar to the contract in this case), the possession of the dangerous animal was given. In that case, in his opinion, Justice BRADLEY uses the following language: "He" (Cumber), "as well as the Hands, had an interest in the use of the stock and was liable for the injury resulting from the trespass upon the plaintiff's premises, but inasmuch as the defendants Hand had neither parted with the title to the stock left by them upon the farm, or rented it to Cumber, they were also liable for any trespass committed by such stock upon the lands of another. The relation of Cumber as the bailee, and his duties assumed with respect to it, did not have the effect to relieve them, who were the general owners, from liability."

I think the learned justice stated the correct doctrine applicable to such a case. The owner of a dangerous animal, having knowledge of its dangerous character, cannot, by delivering possession to his bailee, escape liability for damages resulting from the trespass of such animal. The gravaman of the action is the keeping of the vicious animal with knowledge of its propensities. (*Muller* v. *McKesson*, 73 N. Y., 195.) And the owner of the animal keeps it when in possession of his bailee.

In *Marsh* v. *Hand* (*supra*) the defendants were held not liable, *only* upon the ground that the ram which caused the injury was purchased without authority and without their knowledge or consent.

To hold Kelly in this case solely responsible for plaintiff's injury would be most unjust. Under the contract defendant was to furnish twenty cows, *then on the place*, and *one bull*. The bull, it will be seen, is not specified *as being on the place*. The animal delivered, either at the time or soon afterwards, became vicious and dangerous, and defendant was notified of the fact. He refused to consent to have the animal shut up day or night. He declined to take care of it, or to furnish a ring and chain to be put in his nose. It is not consistent with justice that the owner of a vicious animal, in possession of his bailee, who declines to take care of it at the request of the latter, or to consent to proper measures being taken to prevent the animal from doing a mischief, should escape liability for injuries done by it, or that the bailee should be liable for such injuries. The bailee in this case seems to have been blameless. The vicious bull was put in his possession under the contract, and he was bound to receive it. He promptly notified the owner of the dangerous character of the animal, and endeavored to induce him to consent to proper measures being taken to prevent its doing any injury.

I think that defendant, as the owner of the animal, was liable for the injuries caused by the vicious propensities of his bull, if he knew, prior to the attack by the animal upon plaintiff, of his dangerous character.

If, under the contract, the defendant and Kelly could be deemed tenants in common of the bull (*Sheldon* v. *Skinner*, 4 Wend., 525), the former was also liable. (*Oakes et ux.* v. *Spaulding et al.*, 40 Vt., 347.)

It is claimed by respondent that the action cannot be maintained because the testimony shows that plaintiff was guilty of contributory negligence. I see very little in the evidence indicating any such negligence on the part of plaintiff, but clearly this is not a case where that question could be properly taken from the jury. (*Muller* v. *McKesson*, 73 N. Y., 195.)

The judgment should be reversed and a new trial granted, with costs to abide the event.

MAYHAM, P. J., and HERRICK, J., concurred.

Judgment reversed, a new trial granted, costs to abide the event.