### HARRISON v. McCLELLAN et al.

(Supreme Court, Appellate Division, Third Department. March 9, 1910.)

1. **LANDLORD AND TENANT (§ 323\*)—CROPPING CONTRACT—NATURE OF RELATION.**

    A landlord and tenant under a contract to work a farm on shares are ordinarily considered tenants in common of the crops and farm products, but are not in any sense partners in the business.

    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1351, 1355, 1356, 1369; Dec. Dig. § 323.\*]

2. **LANDLORD AND TENANT (§ 330\*)—CROPPING CONTRACT—TRESPASSING CATTLE.**

    Where, under a cropping contract, the landlord was to furnish certain of the cattle with the farm, but the tenant was entitled to sole possession and the landlord could not dictate in what fields, in what manner, or at what time the cattle should be pastured, or the care that should be taken to prevent their escape, the landlord was not liable for damages to a neighbor's crops done by the escape of the cattle.

    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 1358; Dec. Dig. § 330.\*]

Appeal from Otsego County Court.

Action by Harvey Harrison against John McClellan and others. From a judgment of the Otsego County Court (118 N. Y. Supp. 573) affirming a justice's judgment in favor of plaintiff, defendants John and William McClellan appeal. Reversed.

This is an appeal from a judgment of the Otsego County Court affirming a judgment of justice's court; the appeal being taken from justice's court upon questions of law only. Cattle from the farm owned by the defendants McClellan trespassed upon the plaintiff's farm and injured his corn, to his damage of $27, for which, with costs, he recovered judgment against them and Haines, their tenant. Haines was carrying on the farm under a written agreement which "witnesseth: That the parties of the first part lease their farm on shares, share and share alike, for the period of one year, commencing on March 1st, 1908, and terminating upon March 1st, 1909." Haines was not to sublet any part of the farm. They reserved the right to sell and remove timber from any portion of the woodland "while this lease is in effect." They were to "stock said farm with twenty-one cows and bull, reserving the right to dispose of any of them after November 1st, 1908, and replaced with the same number." Haines accepted the cows then upon the farm, and was not to dispose of any of them. He was also to put on eight cows of his own. He is re-

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

quired to plow and top dress certain lands, to raise five acres of buckwheat, each to furnish half the seeds and phosphate, and, when threshed, the buckwheat is to be divided equally, the milk, except two quarts a day, to be used by Haines, to be delivered each morning at the factory, and the dividends from the factory are to be paid half to each party. Each pays one-half the taxes, and for one-half the salt and paris green. Five acres of potatoes are to be planted, Haines to give them good care, and they are to be divided when dug. They are to determine what land shall be plowed. Seven acres of ensilage corn is to be planted. Haines is to furnish his team. The hay and straw on the place is to be fed to the stock, and the balance, if any, is to remain on the farm. He is to keep not to exceed 29 cows and 3 horses during the winter. The proceeds of the poultry are his. He is to tap and care for the sugar bush and divide the syrup and sugar. They reserve a bedroom in the house for storage purposes. He is not to remove any wood or timber from the farm, but may get his own wood from it, from timber selected by them. Haying is to begin July 1, 1908, is to be well done, including the sides of the track on the trolley road and the flats. "The fences are to be built and repaired and well kept up by him, they to furnish posts and nails to repair fences and build new fences;" second party to take good care of the buildings and stock, all stock to be kept off the meadows in the spring and summer. Many other minute provisions are contained in the lease. Between the plaintiff's cornfield and the McClellan lower meadow there was no fence worthy of the name, and it appears that on account of the better feed Haines turned the cattle into that meadow, and he and his children watched them, but from the 5th to the 10th of September they escaped into the plaintiff's cornfield, and greatly injured the crop.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

George Wohlleben, for appellants.
H. T. Bolten, for respondent.

JOHN M. KELLOGG, J. It is apparent from the agreement or lease that the defendants McClellan had no right to dictate in what fields, in what manner, or at what time the cattle should be pastured, or what care should be taken of them to prevent their escape. Those matters were left solely with the tenant. He was carrying on the farm, and had exclusive control of the farm and the stock, except as otherwise provided in the lease. The McClellans were only interested in one-half the results which came from his management.

It is not always easy to determine the relative rights of the owner and the occupier of a farm worked on shares. The parties may so formulate the agreement that the occupier is the mere servant of the owner, or the occupant, in other cases, may be the tenant, and the relations subject to all the terms applying to landlord and tenant, except that in place of a money rental the landlord receives half the crop. They may ordinarily be considered as tenants in common of the crops and farm products, which are to be divided, but are not in any sense partners in the business. In this case the parties have chosen to treat their relations as that of landlord and tenant; and, while the lease in many respects is very minute as to what the tenant may or may not do, the same minuteness is substantially found in most cases where a money rental is to be paid. There, usually, the milk is placed in a factory, and the moneys therefrom are paid, in great part, to the landlord until his rent is paid, and other conditions are inserted in

the lease with the view of requiring that the farm shall be managed in a thorough workmanlike manner, and ·to insure the landlord his rental and the return of the stock and property without serious detriment. Where premises stocked by the owner are rented, the tenant, and not the landlord, is liable for trespasses committed by the cattle which the landlord has furnished for the use of the tenant. Van Slyck v. Snell, 6 Lans. 299, 302; Atwater v. Lowe, 39 Hun, 150. Liability for the trespass of animals is imposed not because of ownership, but because of possession, and of the duty to care for them. Cooley on Torts, 340. Ordinarily the owner is charged with the duty of restraining his cattle, but in many instances the duty rests not with the owner, but the tenant, or the person who for the time being has their control and management, and may retain the same even against the owner.

· In Lettis v. Horning, 67 Hun, 627, 22 N. Y. Supp. 565, Kelly, by written contract, "took the defendant's farm for one year from March 1, 1891, to work on shares." He was to have 20 cows on the farm and 1 bull. It was held that the bull was not left upon the farm for the benefit of the tenant, but the tenant was merely a bailee of it, keeping it there solely for the accommodation of the owner, and apparently upon that fact alone the liability of the owner rested. We may fairly assume that, if the injury had been committed by one of the leased cows which were upon the farm for the tenant's benefit, the result would have been otherwise. In Marsh v. Hand, 120 N. Y. 315, 24 N. E. 463, Cumber worked the Hands farm on shares for a year. The ram belonging to the Hands was to be kept on the farm with the sheep, but the tenant was the mere bailee of the ram, receiving no possible benefits from it. It was held that, Cumber having traded the ram off and acquired a vicious ram in its place, the Hands were not liable for injuries committed by it, as the ram was not their property. The assumption that otherwise the Hands would be liable must rest upon the fact that the injury was committed by a ram which was not held for the benefit of the tenant, but he was simply pasturing and feeding it for the owner and for his benefit the next year. It was not necessary to the decision, and the case is not an authority against the views here expressed. That case shows that the tenant under such a lease is not a servant of the landlord, but an independent contractor, and that the landlord is not liable for his negligence or the manner in which he performs the duties resting upon him; the court saying at page 322 of 120 N. Y., page 465 of 24 N. E.:

"While they furnished and left the stock on the farm, and were to have a share in the products, he had the entire responsibility of carrying on the business of working it, and accounting for their share in the results. He was the contractor who undertook to do all this, subject only to the terms of the contract he had made with them to do it."

And at page 323 of 120 N. Y., page 465 of 24 N. E.:

"The practical effect of the contract was that the executors should have a share of the products by way of compensation for the use of the property, and that Cumber was entitled to the other share as compensation for his labor in performing the contract. No negligence of the latter in the performance of his work to the prejudice of third parties could charge the Hands with liability."

The plaintiff's injury in this case arose from the fact that the Haines boys did not carefully watch the cows, as their father directed them to do. The McClellans had no right to go upon the premises to watch them and keep them from plaintiff's field. The McClellans had no right to prevent their pasturing upon this meadow, or to dictate the time during which or the place where they should be pastured. It was not within their power to prevent the trespass. The provision in the lease that the landlords are to stock the farm with 21 cows which have been accepted by the tenant, and that they may dispose of any of them after November 1, 1908, and replace with the same number, shows clearly that the cows were leased just as much as the farm was, and as it was stipulated on the trial, and that Haines had an equal control and authority over each, and that the McClellans had no right to remove any of the cows from the farm prior to November 1st. The farm and stock being in the entire control and management of Haines except in the respects indicated in the lease, which are not material here, the defendants McClellan have violated no duty to the plaintiff, and the judgment against them cannot stand.

The cattle upon the McClellan farm were partly owned by the tenant and partly by the landlords, and, if liability were established against the landlords, it could only be for the amount of damage actually committed by their cattle; it being fairly assumed that all the cows trespassing did about an equal amount of damage. Partenheimer v. Van Order, 20 Barb. 479; Wood v. Snider, 187 N. Y. 28, 79 N. E. 858, 12 L. R. A. (N. S.) 912.

The judgment of the County Court and justice's court against the McClellans is therefore reversed, with costs to them in all courts. All concur.